[Crim. No. 14840. Third Dist. Dec. 9, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT TRUITT ROGERS, Defendant and Appellant.

**[Opinion certified for partial publication.]***

---

*Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part I of the Discussion.

**COUNSEL**

Mark E. Merin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Joel Carey and Edgar A. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant pled no contest to one count of possession of marijuana for sale (Health & Saf. Code, § 11359) after his motion to suppress (Pen. Code, § 1538.5) was denied.

On August 27, 1984, while conducting random aerial overflights, a Nevada County sheriff's deputy observed marijuana growing on certain property. He executed an affidavit in support of a search warrant in order to search the area he had observed. The affidavit disclosed that the marijuana was located approximately 500 feet west of a residence in a rural area. A second patch was observed approximately 250 feet away from the residence. Paths connected the two marijuana gardens to the residence.

A search warrant was issued that authorized a search of the residence and vehicles under the control of persons in control of the marijuana. The warrant also included, in one provision, authority to search for "articles of

personal property tending to establish the identity of the person or persons in control of the premises, vehicles, storage areas, or containers where controlled substances may be found, consisting of and including, but not limited to, utility company receipts, rent receipts, cancelled mail, envelopes and keys." The search conducted pursuant to the warrant produced 27 marijuana plants weighing approximately 120 pounds, 17 pounds of "sample" marijuana, containers of marijuana seeds and buds and some miscellaneous papers, including letters and checks.

Defendant contends his motion to suppress was improperly denied because (1) the search warrant used to obtain certain evidence was predicated upon facts obtained by an illegal aerial overflight and (2) the search warrant itself was overbroad. In an unpublished portion of this opinion, we conclude the aerial overflight lawfully established probable cause under *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809]. In this published portion, we conclude the warrant was not overbroad. We therefore affirm the judgment.

DISCUSSION

I*

II

Defendant contends the search warrant was overbroad by authorizing a search for items tending to indicate the identity of persons in control of premises, vehicles, storage areas or containers where controlled substances were found.[1] He cites *People* v. *Frank* (1985) 38 Cal.3d 711 [214 Cal.Rptr. 801, 700 P.2d 415], in support of his position.

*Frank* held that notebooks containing the personal thoughts of the defendant were unlawfully seized pursuant to three clauses of a search warrant

---

*See footnote, *ante*, page 1001.

[1] The warrant authorized the search and seizure of "Marijuana and paraphernalia commonly associated with the storage and use of marijuana, consisting in part of and including, but not limited to, pipes, sifters, alligator clips, baggies, scales and other weighing devices, equipment and tools associated with and used for cultivation of [*sic*] processing marijuana, including but not limited to, irrigation devices, ground processing devices, drying screens, plastic and paper bags for packaging processed marijuana, fertilizer compounds, and *articles of personal property tending to establish the identity of the person or persons in control of premises, vehicles, storage areas, or containers where controlled substances may be found, consisting of and including, but not limited to, utility company receipts, rent receipts, cancelled mail, envelopes and keys.*" (Italics added.)

set forth in the margin.[2] (*Id.*, at p. 722.) The court[3] concluded that clauses two and eight of the warrant were overbroad and failed to satisfy the requirement of article I, section 13, of the California Constitution that a search warrant "'*particularly describ*[e] the place to be searched and the persons and things to be seized.'" (*People v. Frank, supra,* 38 Cal.3d at pp. 724, 726, italics original.) The warrant thus placed no "meaningful restriction upon the objects to be seized, . . ." (*Id.*, at p. 726.) The court also held that all three clauses were unsupported by probable cause; nothing in the affidavit gave the magistrate any factual basis to conclude the defendant's residence contained documentary evidence of his whereabouts at the time of the crime or of any interest he may have had in the crime, or that he had any traffic tickets. (*Id.*, at p. 728.)

Here, defendant does not assert a lack of probable cause supporting the warrant, only that it was insufficiently specific. However, the *Frank* court did not single out as insufficiently particular the clause authorizing the officers to search for and seize indicia of ownership or occupancy (see *id.*, at p. 726) but held only that there was no probable cause to believe any traffic tickets would be found. (*Id.*, at p. 728, fn. 2.) We thus do not read *Frank* as defendant urges us to; the court never held overbroad (as insufficiently particular) the portion of the warrant allowing the search for evidence indicating the identity of the residents of the home. Indeed, one case, *People v. Holmsen* (1985) 173 Cal.App.3d 1045 [219 Cal.Rptr. 598], has read *Frank* as not invalidating such dominion and control clauses. (*Id.*, at p. 1048.)[4]

---

[2] The clauses of the search warrant at issue in *Frank* read as follows:

"'1. *Evidence tending to establish the identities of the occupants, users or owners of the residence, including, but not limited to utility bills or receipts, envelopes, traffic tickets, insurance papers or vehicle registration;*

"'2. Documentary evidence tending to show the whereabouts of Theodore Frank during March 14 and 15, 1978, including, but not limited to credit card receipts, receipts from businesses, records of telephone toll calls made during that period of time; cancelled checks made out or cashed on those dates, ledgers or personal diary notations which would indicate the whereabouts of Theodore Frank on those dates;

"'. . . . . . . . . . . . . . . . .

"'8. Scrapbooks, newspaper clippings, photographs (developed or undeveloped), tape recordings or writings which could relate to the death of Amy [S.] and would indicate either participation and/or an interest in that death by Theodore Frank; . . .'" (*Id.*, at pp. 722-723, italics added.)

[3] The principal opinion was written by Justice Mosk with Justice Broussard concurring. Justice Reynoso concurred in the judgment. Chief Justice Bird's concurring and dissenting opinion sustained the lead opinion's holding that the warrant was overbroad. Justice Kaus wrote a concurring and dissenting opinion, joined by Justice Grodin, which agrees with the conclusion the warrant was overbroad. (*Id.*, at pp. 755-756.) However, Justices Kaus and Grodin felt the claim had not been preserved by timely objection in the trial court.

[4] The *Holmsen* court did find other portions of the warrant at issue to be unsupported by probable cause (*ibid.*), but it did not find the warrant inadequately particular. (*Ibid.*) Because the court concluded there was no probable cause to believe many of the items sought would

We recognize *Frank* uses some rather broad language in its discussion of overbreadth. For example, the court held clause two failed to satisfy the constitutional requirement of particularity because the search for documentary evidence of the defendant's whereabouts at the time of the crime encompassed items described only "by impermissibly general categories such as 'credit card receipts,' 'records of telephone toll calls,' 'cancelled checks,' and 'personal diary notations.' In order to know whether defendant's apartment contained any documents in any of these categories," continued the court, "it would inevitably be necessary for the police to rummage through *all* defendant's personal papers and read enough of each to learn its contents . . . ." (*Frank, supra,* 38 Cal.3d at p. 726, italics original.) The court reached the same conclusion with respect to clause eight of the warrant, which authorized the search for "'scrapbooks,' 'photographs,' 'tape recordings,' and 'writings'—and purported to limit them to items that 'could relate' to the victim's death and 'would indicate' either 'participation' or 'an interest' in that death by defendant. . . . [T]o execute this clause it would be necessary for the police both to rummage through all defendant's 'writings' and to read enough of each to learn its contents." (*Ibid.*)

It is difficult to discern from *Frank* a principled basis to distinguish between the generic categories found insufficiently particular and those not declared so. Thus, "credit card receipts," "records of telephone toll calls" and "cancelled checks" were all declared overbroad (*Frank, supra,* 38 Cal.3d at p. 726) while "utility company receipts" and "insurance papers" were not expressly condemned, even though a search for each category would entail an intrusion into defendant's papers for purposes of examination and possible seizure. In any event, we do not read *Frank* as invalidating the warrant clause at issue here on overbreadth grounds.

██ However, even if our reading of *Frank* is wrong, the decision in that case was based exclusively on article I, section 13, of the California Constitution. (*People* v. *Frank, supra,* 38 Cal.3d at p. 724.) That crime took place in 1978, before the voters amended the California Constitution by enacting Proposition 8 in 1982. (See Cal. Const., art. I, § 28.)[5] Since that provision was added, exclusion of evidence in a criminal trial on grounds it is the product of an illegal search or seizure is compelled only to the extent suppression is required by exclusionary rules necessary to enforce the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]; see, e.g., *People* v. *Lopez* (1986) 181

be inside the home, it remanded the case for a determination whether any items were seized pursuant to those portions of the warrant; the validity of the clause seeking indicia of identity was not implicated by this ruling and in fact was affirmed. (*Id.,* at pp. 1048-1049.)

[5]The *Holmsen* court did not indicate whether that crime was committed before the passage of Proposition 8, although the reliance on *Frank* suggests it was.

Cal.App.3d 842, 844-845 [226 Cal.Rptr. 714]; *People* v. *Love* (1985) 168 Cal.App.3d 104, 107 [214 Cal.Rptr. 483]; *People* v. *Aho* (1985) 166 Cal.App.3d 984, 991 [212 Cal.Rptr. 686]; *People* v. *Medina* (1985) 165 Cal.App.3d 11, 17 [211 Cal.Rptr. 216].)

■ "General warrants, of course, are prohibited by the Fourth Amendment. '[T]he problem [posed by the general warrant] is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by requiring a "particular description" of the things to be seized.' *Coolidge* v. *New Hampshire,* 403 U.S. 433, 467 [29 L.Ed.2d 564, 583, 91 S.Ct. 2022] (1971). This requirement '"makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."' *Stanford* v. *Texas,* 379 U.S. 476, 485 [13 L.Ed.2d 431, 437, 85 S.Ct. 506] (1965), quoting *Marron* v. *United States,* 275 U.S., at 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]." (*Andresen* v. *Maryland* (1976) 427 U.S. 463, 480 [49 L.Ed.2d 627, 642, 96 S.Ct. 2737].) "As for the . . . objective of preventing the seizure of objects on the mistaken assumption that they fall within the magistrate's authorization, *Marron* [v. *United States* (1927) 275 U.S. 192 (72 L.Ed. 231, 48 S.Ct. 74)] goes on to say that 'nothing is left to the discretion of the officer executing the warrant,' but few warrants could pass such a strict test and thus it is more accurate to say that 'the warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty.'" (1 LaFave & Israel, Criminal Procedure (1984) § 3.4(f), p. 227, fn. omitted.)

The warrant clause at issue here has been upheld in the federal courts against claims that it is insufficiently particular under the Fourth Amendment. (*United States* v. *Burns* (10th Cir. 1980) 624 F.2d 95, 101, cert. den. *sub nom. Reynolds* v. *United States* (1980) 449 U.S. 954 [66 L.Ed.2d 219, 101 S.Ct. 361] ["personal property tending to establish the identity of persons in control of contraband," and "related paraphernalia consisting in part and including, but not limited to utility company receipts, rent receipts, cancelled mail envelopes, photographs and keys."]; *United States* v. *Honore* (9th Cir. 1971) 450 F.2d 31, 33, cert. den. (1972) 404 U.S. 1048 [30 L.Ed.2d 740, 90 S.Ct. 728] ["'. . . articles personal property tending to establish the identify (*sic*) of the persons in control of the premises, storage areas or containers where the above-listed property are (*sic*) located, consisting in part of and including but not limited to utility company receipts, rent receipts, cancelled mail envelopes, and keys.'"].) The clause is not overbroad under the Fourth Amendment because "The words therein 'tending to establish the identity of the persons in control of the premises'

sufficiently identify and limit the items to be seized." (*United States* v. *Honore, supra,* 450 F.2d at p. 33.)

Other closely related warrant clauses have also been repeatedly upheld by the federal courts against challenges for overbreadth.[6] (See, e.g., *Milliman* v. *State of Minn.* (8th Cir. 1985) 774 F.2d 247, 249-250 ["Writings, including but not limited to books, checkbooks and bank accounts, magazines, automobile title certificates and registration cards, copies of real estate tax receipts, W-2 forms and other tax-related records . . . all and any of which writings tend to show the presence of Lance Gerald Milliman and (his wife)."]; *United States* v. *Alexander* (9th Cir. 1985) 761 F.2d 1294, 1301-1302 ["'items or articles of personal property tending to show identity of persons in ownership, dominion or control of said premises. . . .'"]; *United States* v. *Reed* (7th Cir. 1984) 726 F.2d 339, 342 ["proof of residency"]; *United States* v. *Whitten* (9th Cir. 1983) 706 F.2d 1000, 1008-1009, cert. den. (1984) 465 U.S. 1100 [80 L.Ed.2d 125, 104 S.Ct. 1593] ["'telephone books, diaries, photographs, utility bills, telephone bills, and any other papers indicating the ownership or occupancy of said residence'"].)

The federal courts have concluded that "whether a warrant fails the particularity requirement cannot be decided in a vacuum. *Vonderahe* v. *Howland,* 508 F.2d 364, 369 (9th Cir. 1974). The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case. *United States* v. *Lebron,* 729 F.2d 533, 538 (8th Cir. 1984); *United States* v. *Apker,* 705 F.2d 293, 299 (8th Cir. 1983)." (*Milliman* v. *State of Minn., supra,* 774 F.2d at p. 250.) We shall apply the foregoing test to determine whether the warrant at issue here is sufficiently particular under the Fourth Amendment.

---

[6]Various other federal cases have upheld warrants with analogous language without expressly deciding the question of overbreadth. (See *United States* v. *Perdomo* (9th Cir. 1986) 800 F.2d 916, 920 ["'. . . documents/paper items which identify the owners of the above-mentioned dwelling, . . .'"]; *United States* v. *Mehrmanesh* (9th Cir. 1982) 689 F.2d 822, 835, fn. 16 [affidavit of DEA agent recited that ". . . it has been my experience and the experience of other DEA agents in searching residences and apartments that the persons occupying or controlling the premises will keep with them indicia of ownership and control of the premises such as phone records, rent receipts, and other miscellaneous records."]; *United States* v. *Marques* (9th Cir. 1979) 600 F.2d 742, 751, fn. 5, cert. den. (1980) 444 U.S. 1019 [62 L.Ed.2d 649, 100 S.Ct. 674] ["'. . . articles of personal property tending to establish the identity of persons and control of premises, storage areas or containers where narcotics are found consisting in part of and including but not limited to utility company receipts, rent receipts, cancelled mail envelopes and keys.'"]; *United States* v. *Rettig* (9th Cir. 1978) 589 F.2d 418, 421-423 ["Indicia of the identity of the residents of said house including, but not limited to, cancelled mail, keys, rent receipts, utility bills, deeds, leases and photographs." (search struck down on other grounds)]; see also *United States* v. *Thompson* (D.C. Cir. 1974) 495 F.2d 165, 169-170.)

■ The warrant clause at issue here arises in a situation where police officers had ample probable cause to believe that occupants of the residence and those in control of vehicles on the premises were engaging in continuing criminal activity. The officers also had ample probable cause to believe contraband—marijuana—would be found in the areas subject to search. However, the officers did not know who lived in the residence nor who was in control of the vehicles nor who was in control of contraband likely to be found on the premises. The affidavit in support of the warrant alleged— and common experience tells us—that houses and vehicles ordinarily contain evidence establishing the identities of those occupying or using them. However, we think it is obvious that the officers could not be expected to divine in advance of their entry the precise nature of such evidence—whether mail, bills, checks, invoices, other documents, or keys. Nor could the officers be expected to know the precise location where such evidence would be located. To require such prescience from the officers would be patently unreasonable. Nor do we perceive a reasonable way to require police officers to describe the nature or location of identity evidence with greater particularity.

■ While a search for the matters described in the warrant may invade the privacy of the occupants of the premises, so does any search. The extent of invasion of privacy is not unreasonable in the circumstances. We cannot believe the Fourth Amendment prohibits officers with ample probable cause to believe those in a residence have committed a felony from searching the residence to discover ordinary indicia of the identities of the perpetrators.
■ We hold that the search warrant in this case was not overbroad under the Fourth Amendment and the evidence challenged by defendant was properly admitted. (*In re Lance W., supra,* 37 Cal.3d at p. 879; *United States v. Burns, supra,* 624 F.2d at p. 101; *United States v. Honore, supra,* 450 F.2d at p. 33.)

DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.