[No. G034435. Fourth Dist., Div. Three. Mar. 30, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
KELLI MARIE BALINT, Defendant and Appellant.

**COUNSEL**

Andrew E. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Scott C. Taylor and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARONSON, J.**—A jury convicted Kelli Marie Balint of receiving stolen property. (Pen. Code, § 496; all statutory references are to the Penal Code.) She contends officers exceeded the scope of a search warrant for her residence when they confiscated an open laptop computer under a warrant clause authorizing seizure of "any items tending to show dominion and control" of the premises searched. We agree with the trial court that a laptop computer logically could serve as a container for information tending to show occupancy and control of the residence. Accordingly, we affirm the judgment.

I

FACTS

Erin Fouche's Compaq-brand laptop computer was stolen from her car in Irvine on October 30, 2002. Anaheim police officers executing a search

warrant on November 25, 2002, found the computer on a living room sofa in Balint and John Stephens's Anaheim residence. The computer was open and turned on, and had been used repeatedly between October 30 and November 25. It contained data identifying Fouche as the owner. Investigators found two additional laptop computers, a damaged WinBook on the floor near the couch, and a Toshiba in a bedroom closet. The serial numbers on the computers had been removed.

Balint, who was not present during the search, telephoned police shortly after the search and asked an investigator whether they planned to arrest her. She claimed the Compaq computer belonged to her, explaining that she purchased it from a "girl" for $200. Asked if it was stolen, she admitted she "thought it was possible," but "didn't want to know if it was stolen." She thought the Toshiba was stolen but claimed she purchased the WinBook at a swap meet. In a subsequent interview, Balint added she purchased the Compaq at a Cypress swap meet three to six months before the search. She now claimed to have purchased the WinBook from a "girl" at "Amy's" house in Westminster for less than $150.

Following a trial in July 2004, a jury convicted Balint of receiving stolen property. (§ 496.) She admitted she had previously served a prison term within the meaning of section 667.5, subdivision (b). The court imposed the two-year midterm and struck punishment on the section 667.5 enhancement.

## II

### DISCUSSION

Balint argues investigating officers illegally seized the Compaq computer while executing the search warrant. She notes the warrant did not identify the Compaq computer, either in the "specifically enumerated" list of stolen property police could seize, or in the "encyclopedic list" of items demonstrating "dominion and control" of the residence. In other words, the seizure of the computer exceeded the scope of the warrant and amounted to a general search. We conclude investigators properly seized the computer pursuant to the warrant's dominion and control clause.

A.  *Suppression Motion Facts*

The parties stipulated to the following facts for purposes of the suppression motion. On November 4, 2002, Anaheim police officers arrested Michael Maydon and others for failing to pay their motel room bill. Officers found a black bag in Maydon's room that contained three credit cards issued to Jessica Jaynes. Contacting Jaynes, officers learned her wallet containing the

credit cards and other property had been stolen at another motel about a week earlier. She suspected her "ex-friends" Maydon and John Stephens had stolen the items while visiting her at the motel. Both men had used methamphetamine with her in the past. A convicted methamphetamine addict herself, Jaynes had not reported the theft and "was going to accept the loss as a lesson."

The next day, Anaheim Detective Tim Schmidt interviewed Maydon in jail. Maydon claimed the black bag officers found in the motel room belonged to him. He admitted he and "Johnny" had visited Jaynes at the motel, but denied knowing anything about her missing credit cards or the other stolen property.

Schmidt learned Stephens previously had been convicted of assault and burglary. On November 14, Jaynes directed investigators to a house in Anaheim where she believed Stephens and Balint lived. Schmidt checked with the water utility company and learned Balint had an active account at the location. Schmidt also learned police had responded to a "disturbance" involving Stephens at an address Balint had formerly provided to the Department of Motor Vehicles.

On November 18, Schmidt obtained a search warrant for the residence based on the above information and his belief, drawn from training and experience, that thieves commonly retain stolen property in their homes to use or to exchange for drugs. The warrant directed officers to search Stephens and his residence for tangible items related to the Jaynes theft. In an attachment to the warrant, Schmidt provided a list of stolen property including Jaynes's Toshiba laptop computer. The warrant also authorized the search for "[a]ny items tending to show dominion and control of the location . . . ."[1]

On November 25, Schmidt served the warrant on Stephens after detaining him at a gas station. Stephens said his girlfriend had left the house earlier and no one was home. Ten officers participated in the house search. Schmidt seized an open Compaq-brand laptop computer that was "opened up and sitting on the sofa in the family room." He also seized other equipment and computers, including Jaynes's Toshiba laptop, located on a shelf in a bedroom closet. Investigators seized other documents, including a September water bill in Balint's name.

---

[1] The complete clause reads: "Any items tending to show dominion and control of the location, including delivered mail, whether inside the location or in the mail box, utility bills, phone bills, rent receipts, safe deposit box keys and receipts, keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and truck keys, recordation of voice transmissions on telephone answering machines, audio tapes and phone message receipts books, and written phone messages, and photographs tending to show occupation of residence and connection between co-conspirators, whether identified or unidentified. And any examples of handwriting including letters, address books, business records, cancelled checks, notes and/or lists."

At the police station, Stephens claimed the Compaq laptop belonged to Balint. The Toshiba was not hers, but he declined to say whether it belonged to him. Schmidt spoke to Balint about the Compaq and subsequently obtained a second search warrant to have it forensically examined, which led investigators to Fouche.

Balint moved to suppress the Compaq computer as outside the scope of the first search warrant. She noted the computer was not specifically listed in the stolen property list and it was not "readily apparent" the computer was stolen or being used for illegal activity. The prosecutor countered "data ordinarily contained in a computer includes information identifying its owner. The search warrant specifically authorized seizure of such identifying information, which was important to establish who exercised dominion and control over the residence named in the search warrant."[2]

The court concluded investigators properly seized the computer: "[I]t seems to me that this would be like an address book that's laying there. It might or might not have things inside it that would be able to prove that the room is defendant's. [¶] It looks like it might. And they're justified in seizing it. . . . [¶] . . . [¶] [T]he personal computer sitting in the room like that in this day and age with what [a] normal, reasonable person knows about a personal computer [is] like [a folder possibly containing identifying information]. And it's seizable immediately as indicia."

B. *Standard of Review*

The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's express or implied factual findings if supported by substantial evidence, but independently apply constitutional principles to the trial court's factual findings in determining the legality of the search. Where the facts are undisputed, as here, we independently determine the legality of the search under the Fourth Amendment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; *People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961].)

C. *Investigators Properly Seized the Compaq Computer Under the Dominion and Control Clause*

The Fourth Amendment requires that a search warrant describe with particularity "the place to be searched, and the person or things to be seized."

---

[2] The prosecution did not argue that investigators could seize the Compaq computer under the plain view doctrine. (See 2 LaFave, Search and Seizure (4th ed. 2004) § 4.11(b) & (d), pp. 782, 791–802 (LaFave), and cases cited [incriminating character of article seized must be immediately apparent, i.e., probable cause to believe the object is a fruit, instrumentality or evidence of a crime].)

(U.S. Const., 4th Amend.) The particularity requirement precludes "a general, exploratory rummaging in a person's belongings" (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 467 [29 L.Ed.2d 564, 91 S.Ct. 2022]) and "the seizure of one thing under a warrant describing another" (*Marron v. United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 48 S.Ct. 74]). As the Supreme Court explained, "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." (*Maryland v. Garrison* (1987) 480 U.S. 79, 84 [94 L.Ed.2d 72, 107 S.Ct. 1013].) Thus, the more specifically the warrant describes the items sought, the more limited the scope of the search. Conversely, the more generic the description, the greater the risk of a prohibited general search. (LaFave, *supra,* § 4.6(a), at pp. 605–606.)

The dominion and control clause at issue here is a standard feature in search warrant practice. Houses and vehicles ordinarily contain evidence identifying those individuals occupying or controlling them. Evidence identifying those in control of premises where stolen property is found tends to aid in conviction of the guilty party. (See *Warden v. Hayden* (1967) 387 U.S. 294, 307 [18 L.Ed.2d 782, 87 S.Ct. 1642] [warrant may authorize seizure of evidence establishing a nexus between the suspect and the crime].) Here, evidence connecting Balint to the residence where police located stolen property linked her to criminal behavior.

Courts have found sufficient particularity in dominion and control clauses similar to the one before us. (See *People v. Alcala* (1992) 4 Cal.4th 742, 799–800 [15 Cal.Rptr.2d 432, 842 P.2d 1192] [officers entitled to read storage locker rent receipt under a " 'boilerplate' " warrant clause authorizing search of residence for " 'articles of personal property tending to establish the identity of persons in control of the premises, . . . including but not limited to . . . rent receipts, cancelled mail envelopes, and keys' "]; *People v. Nicolaus* (1991) 54 Cal.3d 551, 575 [286 Cal.Rptr. 628, 817 P.2d 893] [warrant authorized search and seizure of " 'Letters, papers, bills tending to show the occupants of 2335 Erickson St. #1' " sufficiently particularized]; *People v. Rogers* (1986) 187 Cal.App.3d 1001, 1003–1004 [232 Cal.Rptr. 294] (*Rogers*) [provision authorizing search and seizure of " 'articles of personal property tending to establish the identity of the person or persons in control of the premises, vehicles, storage areas, or containers where controlled substances may be found, consisting of and including, but not limited to, utility company receipts, rent receipts, cancelled mail, envelopes and keys' " not overbroad]; but see *State v. Kealoha* (Hawaii 1980) 62 Haw. 166 [613 P.2d 645] [language authorizing seizure of "property" tending to establish identity of persons in

control of the premises too closely resembles wording of a forbidden general warrant and invites strong intrusion into private papers and other personal effects].)

Balint does not claim the dominion and control clause lacked sufficient particularity. Rather, she argues that the omission of a laptop computer from the detailed and extensive list of items in the dominion and control clause demonstrates a conscious decision by the affiant and issuing magistrate that a laptop computer would not provide evidence of occupancy over the residence. We disagree.

The scope of a warrant is determined by its language, reviewed under an objective standard without regard to the subjective intent of the issuing magistrate or the officers who secured or executed the warrant. (See *Whren v. United States* (1996) 517 U.S. 806, 813 [135 L.Ed.2d 89, 116 S.Ct. 1769]; *Scott v. United States* (1978) 436 U.S. 128, 137–138 [56 L.Ed.2d 168, 98 S.Ct. 1717]; *United States v. Ewain* (9th Cir. 1996) 88 F.3d 689, 694; accord, *People v. Gall* (Colo. 2001) 30 P.3d 145, 154 (*Gall*) ["A policeman's ulterior motive could no more bar a search within the scope of a properly issued warrant than could his pure heart entitle him to exceed the scope of the warrant"].) Phrased differently, "the scope of the officer's authority is determined from the face of the warrant . . . ." (*Thompson v. Superior Court* (1977) 70 Cal.App.3d 101, 109 [138 Cal.Rptr. 603] [supporting affidavit has no bearing on warrant's reach].) As many courts have observed, "officers executing a search warrant are 'required to interpret it,' and they are 'not obliged to interpret it narrowly.' " (*United States v. Stiver* (3d Cir. 1993) 9 F.3d 298, 302; see LaFave, *supra*, § 4.11(a), at p. 774.) To satisfy the objective standard, the officer's interpretation must be reasonable.

Here, the warrant authorized seizure of "*any* items tending to show dominion and control, including [list of items]." (Italics added.) This language authorizes seizure of unenumerated items "tending to show dominion and control" of the premises. In other words, the itemized list following the word "including" may reasonably be interpreted as nonexclusive and merely descriptive of examples of items likely to show who occupied the residence. (Cf. *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560] [the word "including" in a statute is "ordinarily a term of enlargement rather than limitation"].)

This interpretation accounts for the different forms such evidence may take, while cabining the officers' search to the principle articulated in the warrant, namely, the items seized must be reasonably expected to show

dominion and control of the residence. *Rogers, supra,* 187 Cal.App.3d 1001 is instructive on this point. There the court concluded that officers requesting a warrant "could not be expected to divine in advance of their entry the precise nature of such evidence—whether mail, bills, checks, invoices, other documents, or keys. Nor could the officers be expected to know the precise location where such evidence would be located. To require such prescience from the officers would be patently unreasonable." (*Id.* at p. 1009; see also *United States v. Gomez-Soto* (9th Cir. 1984) 723 F.2d 649, 655 (*Gomez-Soto*) [warrant need not anticipate the precise container holding the evidence].) Adoption of Balint's strict interpretation would not only ignore the ordinary meaning of the word "including," it would preclude seizure of unenumerated items that plainly demonstrate residency, such as bank statements, a box of checks, or a wallet with identification cards bearing the premise's address.

■ *Gall* is particularly instructive concerning the seizure of laptop computers. In determining whether seizure of particular items exceeds the scope of the warrant, courts examine whether the items "are similar to, or the 'functional equivalent' of, items enumerated in the warrant, as well as containers in which they are reasonably likely to be found." (*Gall, supra,* 30 P.3d at p. 153; see *United States v. Hill* (5th Cir. 1994) 19 F.3d 984, 987–988; see also LaFave, *supra,* § 4.11(a), at p. 774.) *Gall* applied the "functional equivalency" test to the seizure of a laptop computer during the execution of a search warrant. There, the police obtained a warrant to investigate a possible conspiracy between the defendant and a coworker to murder their supervisors and use explosives during an attack at their workplace. The search warrant authorized seizure of "[a]ny and all" firearms, ammunition, and explosives, "written or printed material" that provided instructions or examples concerning the production or use of firearms and explosives, and "[a]ny documents or materials that show the occupier or possessor of the premises and vehicle." (*Gall, supra,* at p. 148, fn. 4.) In addition to hundreds of written documents, the police seized two desktop computers and five laptop computers from a closet. As was done here, police later obtained additional warrants to search the hard drives of these computers for evidence of the suspected conspiracy. Investigators subsequently determined the laptop computers had been stolen.

The Colorado Supreme Court first noted that police officers may search the location authorized by the warrant, including any "containers" at that location that are reasonably likely to contain items described in the warrant. (*Gall, supra,* 30 P.3d at p. 153.) According to *Gall,* "[t]his container rationale is equally applicable to nontraditional, technological 'containers' that are reasonably likely to hold information in less tangible forms. See *United States v. Meriwether,* 917 F.2d 955, 958 (6th Cir.1990) (upholding search of

'pager' where warrant authorized seizure of phone numbers); *Gomez-Soto,* [*supra,*] 723 F.2d at [pp.] 654–[6]55 (upholding seizure of cassette tapes where warrant authorized seizure of books, papers, diaries, and receipts). Similarly a warrant cannot be expected to anticipate every form an item or repository of information may take, and therefore courts have affirmed the seizure of things that are similar to, or the 'functional equivalent' of, items enumerated in a warrant, as well as containers in which they are reasonably likely to be found. [Citations.]" (*Id.* at p. 153.)

*Gall* concluded the laptop computers were reasonably likely to serve as containers for writings, or the functional equivalent of "written or printed material" of a type enumerated in the warrant. The court noted the computers "were not found in a packaged state or in any way suggesting that they could not have been used for the purposes for which they were designed." (*Gall, supra,* 30 P.3d at p. 154.) The court further observed it was permissible to seize the computers rather than search them at the scene. Because the sorting of described items from intermingled, undescribed files would unduly prolong the officers' presence on the premises, the court concluded it would be less intrusive to transfer the computers to another location to complete the search.[3] Also, such a search typically requires a degree of expertise beyond that of the executing officers, "not only to find the documents but to avoid destruction or oversearching." (*Ibid.*; see *United States v. Upham* (1st Cir. 1999) 168 F.3d 532, 535–536 [permissible for agents to seize computer, computer equipment, and disks where search on the premises could not readily be performed].)

█ Persuaded by the foregoing analysis, we conclude the open laptop computer at issue here amounts to an electronic container capable of storing data similar in kind to the documents stored in an ordinary filing cabinet, and thus potentially within the scope of the warrant.[4] We perceive no reasonable basis to distinguish between records stored electronically on the laptop and documents placed in a filing cabinet or information stored in a microcassette. (See *United States v. Hargus* (10th Cir. 1999) 128 F.3d 1358, 1363 [seizure of filing cabinets]; *Gomez-Soto, supra,* 723 F.2d at p. 655 [finding microcassette sufficiently similar to a briefcase containing documents].)

Balint argues that the information on a laptop computer, in contrast to an immobile desktop computer, might reveal ownership of the computer but not

---

[3] Numerous courts have approved this procedure. (See, e.g., *United States v. Schandl* (11th Cir. 1992) 947 F.2d 462 [observing that requiring agents to conduct a thorough search of a large volume of written documents and computer disks on-site would result in a more intrusive search requiring a substantially longer amount of time].)

[4] We acknowledge computer technology may minimize governmental intrusion by limiting the search of computer files in ways not possible in a traditional document search. This is a separate inquiry from whether the laptop computer is likely to contain the information sought in the warrant, and is not raised in this appeal.

information concerning ownership of the premises searched. We disagree. Many people use laptops as their primary computers and, in any event, a willingness to leave a mobile—and often expensive—device unattended in a residence suggests occupancy. Additionally, as the Attorney General points out, laptop computers are commonly used for personal correspondence, electronic payment of bills, and storing other information analogous to the examples listed in the warrant that are responsive to the dominion and control principle. Under the functional equivalency test, the fact these documents are in digital form does not bar officers from seizing the evidence. In particular, we note the police discovered the laptop computer in its "open" position, suggesting it was not merely stored on the premises. (See *Gall, supra,* 30 P.3d at p. 154.) In sum, under the circumstances present here, we conclude an open laptop computer is likely to serve as a container of information tending to establish dominion and control of the residence in which it is found.

Balint asserted at oral argument that the removal of the laptop from the residence and the subsequent procurement of a second warrant to search the laptop's files demonstrates the officers understood the computer did not qualify as evidence of dominion and control. Again, however, the officers' subjective beliefs are irrelevant. (*Gall, supra,* 30 P.3d at p. 154.) In any event, because Balint admitted immediately after the search that the laptop belonged to her, it seems more likely officers sought a second warrant to tailor their search for relevant files and immunize the search from later Fourth Amendment claims. We note Balint does not contest the legality of this search.

Finally, Balint complains that sanctioning the seizure here would authorize general warrants because virtually any item within a residence might have some identifying mark, such as a novel with a personal inscription or a certificate of ownership on the back of a painting. We are not called upon to decide whether these hypothetical cases would pass muster under a dominion and control clause that often varies depending on the location searched. Suffice it to say that an open laptop in plain view presents an obvious source of potentially responsive evidence that the officers here were not required to ignore. Accordingly, we conclude the trial court properly denied the motion to suppress.[5]

---

[5] In light of our disposition, we need not address the Attorney General's argument the good faith exception to the warrant requirement also justifies admission of the evidence. (*United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] [evidence obtained pursuant to a facially valid search warrant subsequently determined to be invalid admissible if officers executed the search in objectively reasonable reliance upon the validity of a search warrant issued by a neutral magistrate]; accord, *People v. Bradford* (1997) 15 Cal.4th 1229, 1291 [65 Cal.Rptr.2d 145, 939 P.2d 259].)

## III

### DISPOSITION

Judgment affirmed.

Sills, P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied April 11, 2006, and appellant's petition for review by the Supreme Court was denied June 21, 2006, S143008.