Filed 6/29/23  P. v. Coughlin CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ZACHARY BARKER COUGHLIN,<br><br>  Defendant and Appellant. | 2d Crim. No. B315841<br>(Super. Ct. No. 20CR06975)<br>(Santa Barbara County) |

Zachary Barker Coughlin appeals from the judgment entered after a jury had found him guilty of committing multiple sex offenses against four women – Jane Does 1 through 4.  With the exception of Jane Doe 2, appellant videotaped the commission of the offenses.  Appellant notes, "Most of the sexual activity that formed the basis for the charges took place in [his] bus that was filled with mirrors and contained video equipment."

Appellant contends: (1) a search warrant authorizing the search of his cell phone, laptops, and hard drives violated the Fourth Amendment's particularity requirement; (2) he was

denied his constitutional right to effective assistance of counsel because his trial counsel failed to properly challenge the search warrant; (3) the trial court erroneously ordered his legs shackled during the trial; (4) the court erroneously precluded him from arguing that a woman may consent in advance to the commission of sex acts upon her while she is unconscious; and (5) the court abused its discretion in allowing the jury to watch videos of his commission of charged and uncharged sex offenses.  We affirm.

*Guilty Verdicts and Appellant's Sentence*[1]

The jury convicted appellant of sexual penetration by a foreign object upon an unconscious person (Pen. Code, § 289, subd. (d));[2] sexual penetration by a foreign object upon an intoxicated person (§ 289, subd. (e)); forcible sexual penetration by a foreign object with true findings on kidnapping allegations (§§ 289, subd. (a)(1)(A), 667.61, subds. (a)(d)(2), (b)(e)(1)); rape of an intoxicated person (§ 261, subd. (a)(3)); two counts of rape of an unconscious or asleep person (§ 261, subd. (a)(4)(A)); three counts of forcible rape (§ 261, subd. (a)(2)); forcible rape with true findings on kidnapping allegations (§§ 261, subd. (a)(2), 667.61, subds. (a)(d)(2), (b)(e)(1)); kidnapping to commit rape (§ 209, subd. (b)(1)); two counts of forcible oral copulation (§ 287, subd. (c)(2)(A)); and forcible oral copulation of an unconscious person (§ 287, subd. (f)(1)).  The jury found true an allegation that in the present case appellant had been convicted of committing sex

---

[1] We omit a summary of the evidence presented at trial. The facts underlying appellant's convictions are immaterial to the issues on appeal.

[2] Unless otherwise stated, all statutory references are to the Penal Code.

offenses against more than one victim (§ 667.61, subds. (b), (c), (e)(4)).

The trial court sentenced appellant to prison for an aggregate determinate term of 20 years plus an aggregate consecutive indeterminate term of 125 years to life.

*Sealed Search Warrants and Supporting Affidavits*

This case involves two search warrants and supporting affidavits. The trial court ordered the documents sealed. On June 13, 2022, appellant's counsel filed in this court an application to unseal the documents. The application stated: "The trial court originally ordered the [documents] sealed because the [affidavits] referred to the [confidential citizen-informants] by name . . . . [¶] However, appellant presently challenges the denial of the motion to suppress evidence gained as a result of the search warrants. . . . [S]ome information needed to rule on the motion is contained in the sealed documents." (See *People v. Hobbs* (1994) 7 Cal.4th 948, 971 ["all or any part of a search warrant affidavit may be sealed if necessary to . . . protect the identity of a confidential informant"].)

We denied the application to unseal the documents. We granted counsel's request for a copy of the sealed record on appeal, which includes the documents in question. We ordered counsel to "not make copies of these documents or reveal the contents of these documents to his client."

Appellant's counsel subsequently filed a publicly-available opening brief citing extensively to the sealed documents. "Nothing filed publicly in the reviewing court – including any . . . brief . . . – may disclose material contained in a record that is sealed . . . ." (Cal. Rules of Court, rule 8.46(g)(1).) Pursuant to

Rule 8.46(g)(2)(A) and (B), counsel should have filed a "public redacted version" and a confidential "unredacted version" of the opening brief.

In this opinion we refer to facts in the sealed documents that counsel disclosed in his opening brief. These facts were earlier disclosed in appellant's publicly-filed motion to suppress evidence. The trial court did not order the motion sealed. It is included in the publicly-available clerk's transcript. The motion identified the confidential informants by their initials and contained no contact information for the informants. The sealed documents, in contrast, disclosed the informants' full names. We set forth only those facts necessary to adequately consider the issues on appeal. In *Sager v. County of Yuba* (2007) 156 Cal.App.4th 1049, 1051, the record was sealed, but the court concluded it "must discuss *some* facts in order to provide an opinion 'in writing with reasons stated' as required by the California Constitution. (Cal. Const., art. VI, § 14.)"

*First Search Warrant and Supporting Affidavit*

Appellant does not contest the validity of the first search warrant and supporting affidavit. In the affidavit, the affiant set forth facts supporting his belief that appellant was stalking two women in violation of section 646.9. The affiant declared: "Based on my training and experience, I know that those involved in the crime of stalking will oftentimes use cell phones, laptops, . . . and other devices . . . for . . . communication with their victims. I also know that [they] . . . will also keep photos of victims/ residences/ workplaces . . . on cell phones, laptops[,] . . . and portable digital storage devices that may be found in the possession of the suspect. I therefore request that a search warrant be authorized to search [appellant's] residence, a red and black converted school

4

bus . . . so that these items may be found and seized." Based on the affidavit, a magistrate issued a warrant authorizing the search of appellant's bus for "[a]ll cell phones" and electronic storage devices.

*Second Search Warrant and Supporting Affidavit*

Appellant contests the validity of the second search warrant. In the supporting affidavit, the affiant declared that on May 18, 2020, deputy sheriffs had made a traffic stop of appellant's bus. During a search of the bus pursuant to the first search warrant, they seized five cell phones, three laptop computers, and a black bag containing several hard drives. The affiant believed that these items may contain evidence relevant to the stalking investigation. He requested that the items be searched for the period "between [January 1, 2019] and [May 19, 2020], the period of time that will include events leading up to the day of the first meeting between Victim #1 and [appellant] and [appellant's] arrest the night on [May 18, 2020]."

The second search warrant authorized a search of the seized items for "all data that constitutes evidence and instrumentalities of violations of . . . [section] 646.9 PC [stalking] by [appellant], including communications referring to or relating to this investigation involving any or all of the following people . . . : [warrant stated names of the two confidential informants whom appellant had allegedly stalked]."

*Evidence Discovered During Search*
*Pursuant to Second Search Warrant*

During the search pursuant to the second search warrant, law enforcement officials discovered approximately 7,000 videos and 158,000 photographs. "[A] lot of [the videos] were duplicates of basically the same event." Some of the videos and photographs

5

depicted appellant's commission of sex acts upon women.  The sex acts did not involve the stalking victims identified in the search warrants and supporting affidavits.

The jury watched videos depicting the charged sex offenses committed by appellant against Jane Does 1, 3, and 4.  It also watched videos depicting uncharged sex offenses committed by appellant against Jane Does 5 and 6.  The People graphically describe the videos at pages 11-20 of respondent's brief.

> *The Second Search Warrant Did Not Violate the*
> *Fourth Amendment's Particularity Requirement*

Appellant contends the second search warrant "lacked any meaningful limits [on the search] and therefore violated the particularity requirement of the Fourth Amendment."[3]  (Bold omitted.)  "The Fourth Amendment requires that a search warrant describe with particularity 'the place to be searched, and the person or things to be seized.'  (U.S. Const., 4th Amend.)" (*People v. Balint* (2006) 138 Cal.App.4th 200, 205-206.)  "The purpose of the 'particularity' requirement of the Fourth Amendment is to avoid general and exploratory searches by requiring a particular description of the items to be seized." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1296.)

"'[I]ndiscriminate searches and seizures conducted under the authority of "general warrants" were the immediate evils that motivated the framing and adoption of the Fourth Amendment.' [Citation.]  The particularity requirement of the Fourth Amendment helps to ensure that a search or seizure 'will not

---

[3] Appellant does not contend the search warrant affidavit failed to establish probable cause for the search.  Appellant alleges, "There may have been probable cause to search [his] devices for evidence of stalking . . . ."

take on the character of the wide-ranging exploratory searches . . . the Framers intended to prohibit.'" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1132 (*Robinson*).)

"However, a warrant 'need only be reasonably specific' [citation], and 'the specificity required "varies depending on the circumstances of the case and the type of items involved."' [Citations.] The constitutional and statutory requirements of particularity are satisfied if the warrant 'imposes a meaningful restriction upon the objects to be seized.' [Citation.] The requirement of reasonable particularity 'is a flexible concept, reflecting the degree of detail available from the facts known to the affiant and presented to the issuing magistrate.'" (*Robinson*, *supra*, 47 Cal.4th at p. 1132.)

"Whether a warrant's description of property to be seized is sufficiently particular is a question of law subject to independent review by an appellate court. [Citation.] In considering whether a warrant is sufficiently particular, courts consider the purpose of the warrant, the nature of the items sought, and 'the total circumstances surrounding the case.' [Citation.] A warrant that permits a search broad in scope may be appropriate under some circumstances, and the warrant's language must be read in context and with common sense." (*People v. Eubanks* (2011) 53 Cal.4th 110, 133-134.)

Appellant argues: "The [second search] warrant allowed the police to search every application, file, and piece of data on the phones and hard drives. The searches could have been limited to the individuals identified in the stalking cases, and could have used specific key words . . . or derogatory comments consistent with cyber stalking. But there were no limits (other than the dates mentioned [the period between January 1, 2019 and May

7

19, 2020]) and police were permitted to rummage through appellant's entire life, all of the privacies of life one keeps on his cell phones and computers, and discover evidence it would argue to be rape — which was unrelated to the stalking case they were investigating. . . . [A]n investigation into potential stalking did not permit a fishing expedition into appellant's life that revealed potential sex offenses involving . . . other . . . women."

The second search warrant's description of the scope of the search complied with the Fourth Amendment's particularity requirement. The warrant did not authorize an exploratory search. It limited the search to evidence concerning the criminal offense of stalking. The warrant authorized a search for "evidence . . . of violations of . . . [section] 646.9 PC [stalking] by [appellant], including communications referring to or relating to this investigation involving . . . the [two stalking victims identified in the search warrants and supporting affidavits]."

"'[A] warrant may satisfy the particularity requirement *either* by [(1)] identifying the items to be seized by reference to a suspected criminal offense or by [(2)] describing them in a manner that allows an executing officer to know precisely what he has been authorized to search for and seize.'" (*United States v. Cobb* (4th Cir. 2020) 970 F.3d 319, 329 (*Cobb*).) Here, the second search warrant clearly satisfied the first criterion. It "'identif[ied] the items to be seized by reference to a suspected criminal offense'" – the stalking of two women named in the warrant. (*Ibid.*; see *United States v. Palms* (10th Cir. 2021) 21 F.4th 689, 700 [as to search of defendant's cell phone, "the warrant's limitation to evidence of the crime of human trafficking satisfied the Fourth Amendment's particularity requirement"]; *United States v. Hall* (7th Cir. 1998) 142 F.3d 988, 996-997 ["we

8

hold that the search warrants were written with sufficient particularity because the items listed on the warrants were qualified by phrases that emphasized that the items sought were those related to child pornography"]; *United States v. Castro* (6th Cir. 2018) 881 F.3d 961, 965 ["A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime"]; *United States v. Bishop* (7th Cir. 2018) 910 F.3d 335, 337 ["It is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation"].)

Appellant does not claim, and could not validly claim, that the seizure of the videos of his sex crimes with other women was unlawful because the second search warrant did not authorize their seizure. The police lawfully seized these videos under the plain view doctrine. (See *Coolidge v. New Hampshire* (1971) 403 U.S. 443, 465 ["An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character"]; *United States v. Williams* (4th Cir. 2010) 592 F.3d 511, 522 [plain view doctrine applied to discovery of child pornography while conducting computer search under warrant authorizing search for evidence of crimes involving threats of bodily harm and harassment by computer].)

"'[T]he requirement that a search warrant describe its objects with particularity is a standard of "practical accuracy" rather than a hypertechnical one.' [Citations.] The rule against excessive parsing of the language used in a warrant . . . militates in favor of truthfinding in criminal investigations, a value of significant importance to the public safety and societal order."

(*People v. Superior Court (Nasmeh)* (2007) 151 Cal.App.4th 85, 96.) "So long as the warrant describes the items to be seized with enough specificity that 'the executing officer is able to distinguish between those items which are to be seized and those that are not,' [citation], the particularity standard is met." (*United States v. Blakeney* (4th Cir. 2020) 949 F.3d 851, 862.) The particularity standard was met here.

*Appellant Was Not Denied His Constitutional*
*Right to Effective Assistance of Counsel*

Appellant maintains he was denied his constitutional right to effective assistance of counsel because his trial counsel failed to challenge the second search warrant under the Electronic Communications Privacy Act (CalECPA, § 1546 et al.). "'[T]o demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." . . .'" (*In re Avena* (1996) 12 Cal.4th 694, 721.) The defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

Appellant asserts, "The warrant here failed because it did not specify any apps or files where there might be evidence of

10

cyberstalking."  Thus, the warrant "violated the heightened particularity requirements described in section 1546.1(d)(1)" of the CalECPA.  Section 1546.1, subdivision (d)(1) provides, "The warrant shall describe with particularity the information to be seized by specifying, *as appropriate and reasonable*, the time periods covered, the target individuals or accounts, the applications or services covered, and the types of information sought . . . ."  (Italics added.)

Appellant has not carried his burden of showing that counsel's performance was deficient and prejudicial because counsel failed to argue that, in violation of section 1546.1(d)(1), the second search warrant "did not specify any apps or files where there might be evidence of cyberstalking."  Appellant does not refer us to any evidence in the record showing that law enforcement personnel knew or reasonably should have known which apps or files might contain evidence of stalking.  "[I]t is impossible to tell what a computer storage medium contains just by looking at it."  (*United States v. Hill* (9th Cir. 2006) 459 F.3d 966, 973; see also *Cobb*, *supra*, 970 F.3d at 329-330 [court rejected defendant's argument that "the police could not search the computer because the police could not *foretell* the murder evidence that was located on the computer or the location of that evidence within the contents of the computer"].)

*Appellant Was Not Prejudiced by the Court's*
*Order that He Be Shackled during the Trial*

The trial court found that appellant "poses a significant security risk."  It ordered that he be restrained with leg shackles.  The chains would be covered with tape so they would not make a clanking noise.  The court observed: "We . . . have a black table skirt around both Counsel tables which blocks the view from

11

the . . . jurors of any of those shackles.  [¶]  The Sheriff's Department does a very good job of ensuring that the jurors and prospective jurors never see or know that the defendant is being moved . . . ."  The court said it would take additional measures to assure that the jury was not aware of the shackling.

Appellant maintains the trial court erred in ordering the restraint.  "'[A] criminal defendant may be subjected to physical restraints in the jury's presence upon "a showing of a manifest need for such restraints."  [Citations.] . . .' . . . The trial court's determination is reviewed for abuse of discretion."  (*People v. Williams* (2015) 61 Cal.4th 1244, 1259 (*Williams*).)

We need not consider whether the trial court abused its discretion.  If it had abused its discretion, "[appellant] cannot demonstrate prejudice.  "'[W]e have consistently held that courtroom shackling, even if error, [is] harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense.""'" (*People v. Young* (2019) 7 Cal.5th 905, 935.)  There is no such evidence here.  Appellant testified at trial.  "No evidence suggests the restraint . . . affected his [testimony or] demeanor or impaired his ability to communicate with defense counsel." (*Williams*, *supra*, 61 Cal.4th at p. 1259.)

*Advance Consent Is Not a Defense to Sex*
*Acts Committed upon an Unconscious Woman*

The People made a pretrial motion "to preclude the defense from arguing that prior consent by any victim for [appellant] to engage in sexual activity with her while she is asleep or unconscious is a valid defense."  Relying on *People v. Dancy* (2002) 102 Cal.App.4th 21 (*Dancy*), the trial court granted the motion.  Appellant asserts, "The holding in *Dancy* is fatally

12

flawed and deprived [him] of his Sixth and Fourteenth Amendment right to present a defense."

In *Dancy* the appellate court rejected the defendant's argument "that a man who intentionally engages in sexual intercourse with an unconscious woman, knowing that she is unconscious, does not harbor general criminal intent . . . if he reasonably believes that the woman has consented in advance or would have consented if she had been conscious." (*Dancy*, *supra*, 102 Cal.App.4th at p. 36, fn. omitted.) The court explained: "The concept of an 'advance consent' to unconscious sexual intercourse is based on a fallacy. A decision to engage in sexual intercourse is necessarily an ad hoc decision made at a particular time with respect to a particular act. While a woman may expressly or impliedly consent to *conscious* sexual intercourse in advance, she remains free to withdraw that consent, and ordinarily has the ability to do so since she is conscious. Even if a woman expressly or impliedly indicates in advance that she is willing to engage in *unconscious* sexual intercourse, a man who thereafter has sexual intercourse with her while she is unconscious necessarily deprives her of the opportunity to indicate her lack of consent. The inherent risk that a man may misinterpret a woman's prior statements or conduct weighs strongly against recognizing 'advance consent' as a defense to rape of an unconscious person since the woman's lack of consciousness absolutely precludes her from making her lack of consent known at the time of the act. It follows that a man who intentionally engages in sexual intercourse with a woman he knows to be unconscious harbors a 'wrongful' intent regardless of whether he believes that she has (or she actually has) consented in advance to the act." (*Id.* at p. 37.)

13

We find the reasoning of *Dancy* persuasive and follow it here. The trial court did not err in precluding appellant from arguing that advance consent is a defense to the commission of sex acts upon an unconscious person.

*The Trial Court Did Not Abuse Its Discretion in*
*Allowing the Jury to Watch Videos of Appellant's Sex Offenses*

Appellant claims that, in violation of Evidence Code section 352 (section 352) and his right to due process, the trial court abused its discretion in allowing the jury to watch "inflammatory" videos of his commission of sex offenses against Janes Does 1 and 3 through 6. Appellant protests that he "was convicted in a 'trial by video'" that "increased the chance that the jurors would vote to convict [him] because they hated him rather than because he had actually raped the women who entered his bus."

Section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"Trial courts enjoy '"broad discretion"' in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value. [Citations.] A trial court's exercise of discretion 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168 (*Holford*).)

14

"The prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has *very little effect on the issues*. In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Karis* (1988) 46 Cal.3d 612, 638, italics added.)

"'"On appeals challenging discretionary trial court rulings, it is *appellant's* burden to establish an abuse of discretion. . . .'"" (*Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1307.) Appellant has failed to carry his burden of showing that the trial court abused its discretion. The videos of Jane Does 1, 3, and 4 depicted appellant's commission of *charged* sex offenses. Therefore, the videos were extremely probative. They were the only evidence available where the victim was unconscious during the commission of the sex offenses.

The videos of Jane Does 5 and 6 depicted appellant's commission of uncharged sex offenses. The videos were admissible under Evidence Code section 1108. "When a defendant is accused of a sex offense, Evidence Code section 1108 permits the court to admit evidence of the defendant's commission of other sex offenses, thus allowing the jury to learn of the defendant's possible disposition to commit sex crimes. [Citation.] The court has discretion under Evidence Code section 352 to exclude the evidence if it is unduly prejudicial. [Citation.] The evidence is presumed admissible and is to be excluded only if

15

its prejudicial effect substantially outweighs its probative value in showing the defendant's disposition to commit the charged sex offense or other relevant matters." (*People v. Cordova* (2015) 62 Cal.4th 104, 132.)

The circumstances of the uncharged sex offenses against Jane Does 5 and 6 are similar to the circumstances of the charged offenses. Thus, the videos of Jane Does 5 and 6 were highly probative as to appellant's commission of the charged offenses. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 ["the probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses"].) But "[a]dmissibility under Evidence Code section 1108 does not require that the sex offenses be similar; it is enough the charged offense and the prior crimes are sex offenses as defined by the statute. [Citation.] That criterion is clearly met here." (*People v. Jones* (2012) 54 Cal.4th 1, 50.)

The videos of the uncharged offenses were "no more inflammatory than [the videos of] the charged offenses, so [the] additional prejudicial effect [of the uncharged-offense videos] was minimal. For the same reason, it was unlikely the jury would return a guilty verdict based upon the uncharged misconduct rather than the charged offenses." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 408.)

Accordingly, the trial court acted well within its discretion in permitting the jury to watch the videos. "Having concluded that the trial court did not abuse its discretion under section 352, we must also reject [appellant's] argument that he was deprived of his constitutional [due process] right to a fair trial." (*Holford, supra*, 203 Cal.App.4th at p. 180.)

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

17

Von Deroian, Judge

Superior Court County of Santa Barbara

_____

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.