[No. H029987. Sixth Dist. May 23, 2007.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
MAURICE XAVIER NASMEH, Real Party in Interest.

COUNSEL

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Mary Jo Graves, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Amy Haddix and John H. Deist, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Law Office of Daniel Jensen, Daniel Jensen; Law Office of J. Courtney Shevelson and J. Courtney Shevelson for Real Party in Interest.

OPINION

DUFFY, J.—Real party in interest Maurice Xavier Nasmeh has been charged with the murder of Jeanine Harms (Pen. Code, § 187)[1] and awaits trial. The superior court granted a pretrial motion by Nasmeh to suppress evidence (§ 1538.5), ruling that the search and seizure of Nasmeh's car exceeded the scope of a warrant and that there was no other ground to permit the introduction of the evidence. The People petitioned for a writ of mandate in

---

[1] All further statutory references are to the Penal Code.

this court asking us to order the superior court to vacate its order granting the motion to suppress and enter a new order denying the motion.

Because the warrant authorized the search and seizure in question, and because in any event the search and seizure were reasonable under the automobile exception to the Fourth Amendment's warrant requirement, the superior court erred in granting Nasmeh's motion to suppress. We will issue the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Background Facts and Police Officer's Affidavit*

Following Harms's disappearance over the weekend of July 28 through 29, 2001, police investigation focused on Nasmeh as the last person to report seeing her alive when he left her house in Los Gatos in the early morning of July 28. The police obtained a search warrant to search Nasmeh's home and car for certain items missing from Harms's house, including a large Persian-style rug.

According to the affidavit of Officer Steve Wahl of the Los Gatos-Monte Sereno Police Department offered in support of a warrant to search Nasmeh's home and vehicle, on July 30, 2001, Chigiy Edson-Binell, Harms's friend and landlord, filed a missing-person report regarding Harms, who had failed to report to work on Monday and whose family and friends had not been able to contact her all weekend. Edson-Binell had noticed that Harms's car had remained in her driveway all weekend. When the police and Edson-Binell went inside Harms's residence, she was absent and several items were missing, including seat cushions and pillows from the couch, a rug usually in front of the couch, and Harms's purse.

Examination of Harms's car produced Nasmeh's fingerprint. Police officers interviewed Nasmeh on July 31, 2001. He admitted going to Harms's house with her. He reported following her in his Jeep Cherokee sport utility vehicle and parking in front of her house. He said they arrived between 10:30 and 11:00 p.m. After talking for a while, they went to a corner market to purchase beer and returned to the house. They continued to talk for about an hour, when Harms said she was sleepy and fell asleep on the couch. She had told him he could stay until he was sober enough to drive. He said he stayed for another hour, and then left without any acknowledgment from the sleeping Harms. Nasmeh said he used the bathroom while he was there, but he denied engaging in any sexual interaction with Harms. He did not recall anything unusual about Harms's couch, such as missing cushions, and he believed there was a rug in front of the couch but he could not describe it. Nasmeh

also reported that as he was driving away, he saw a man get out of a car parked on the street several driveways behind him and walk in his direction, which he thought was strange for that hour of the night.

During the investigation, the police learned from a neighbor of Harms that in the early morning hours of July 28, 2001, he heard a loud bang similar to a gunshot. When he looked out his window, he saw a vehicle headlight make a quick turning movement, as if a vehicle was possibly making a U-turn, in front of Harms's house.

In the affidavit, Officer Wahl also averred that "I know, based on my training and experience," that "people who commit murder and transport their victims in their vehicles may, in an attempt to conceal their guilt, try to clean their vehicle in an attempt to conceal or rid the vehicle of incriminating evidence."

II. *The Search Warrant*

On August 3, 2001, a magistrate signed the following search and seizure warrant:

"To any Sheriff, Constable, Marshal, Police Officer or Peace Officer in the County of Santa Clara:

"Proof by affidavit[] having been made before me this day by Steve Wahl that there is probable cause for believing that evidence of the commission of [murder] [has occurred] . . . .

"You are therefore commanded in the daytime to make search of [a home in] San Jose, Santa Clara County, California . . . .

"And . . . Maurice Xavier Nasmeh, date of birth February 3, 1964; described as a white male adult, 5' 8" tall, 180 pounds, brown hair, green eyes, wherever located in Santa Clara County.

"And . . . [a] 2000 Jeep Cherokee, gray in color, bearing California license number 4MUC016, wherever located in Santa Clara County;

"Property described as follows:

"1. Pair of tan colored khaki shorts;

"2. Pair of brown colored utility-type boots;

"3. Blood sample from Maurice Xavier Nasmeh;

"4. Receipts tending to show the washing or detailing of Nasmeh's vehicle;

"5. Couch cover with a blue floral pattern;

"6. [Two sofa] cushions white in color with blue pin-stripes;

"7. Woman's black leather purse containing items associated with Jeanine Harms;

"8. Credit cards and/or personal checks bearing the name of Jeanine Harms;

"9. Floor rug described as being mostly blue Persian style wool rug with a tag on the back;

"10. Indicia of occupancy consisting of articles of personal property tending to establish the identity of the person in control of the premises searched, including but not limited to phone bills, utility bills, rental agreements, identification papers, canceled mail and personal letters. Other evidence of ownership and control may be found on the occupants and may be keys, rent receipts and identification with names and addresses.

"And if you find the same or any part thereof, to hold such property in your possession under California Penal Code Section 1536." (Boldface and capitalization of entire word attributes removed.)

Various items of clothing were seized from Nasmeh's house. Wahl visually inspected Nasmeh's Jeep Cherokee to see if it contained any of the listed items, but saw none. The car was then towed to the police crime laboratory for forensic processing. Certain forensic evidence was purportedly found on a tape lift of the rear cargo area of the vehicle.[2]

### III. *The Motion to Suppress*

As alluded to, after Nasmeh was charged with murdering Harms he filed a motion under section 1538.5 to quash the search warrant and to suppress evidence seized under the warrant.[3] At a hearing on the motion, Wahl testified

---

[2] At Nasmeh's request, we strike the petition's exhibit R because it was not considered by the superior court.

[3] The People point out that Nasmeh's motion is entitled "Super[s]eding notice of motion and motion to suppress evidence . . . ." because Nasmeh's initial filing was rejected for failure to comply with local rules of court.

that after looking in the Jeep for the items listed in the search warrant, he sealed the vehicle and had it transported to the crime laboratory to search for trace or biological evidence related to those items. Based on his training and experience, Wahl suspected that trace evidence from Harms's body or the missing items might be found in Nasmeh's vehicle, which was big enough to transport her body, the couch cushions and pillows, couch cover, and rug. Wahl believed that the search warrant authorized him to search the vehicle for trace evidence and that under the law he could seize the vehicle and move it to another location to facilitate the search.

The superior court concluded that seizing Nasmeh's car and taking it to the crime laboratory for forensic examination exceeded the scope of the search warrant. The court further concluded that the automobile exception applied to the police officer's warrantless search of the car, but the duration of the search violated Nasmeh's possessory interest in the car without adequate justification. The court granted Nasmeh's motion to suppress forensic evidence the police purportedly discovered in the rear cargo area of Nasmeh's Jeep Cherokee.

The superior court's reasoning regarding the scope of the warrant is important to understanding how the court erred in suppressing the evidence. We therefore set forth its ruling at length. The court wrote:

"The seizure and removal of the jeep exceeded the scope of the warrant . . . .

"The permissible scope of any search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. This protection against wide-ranging exploratory searches is embodied in the requirement that no warrant issue unless it 'particularly describes the place to be searched and the persons or things to be seized' (*Maryland v. Garrison* (1987) 480 U.S. 79, 84 [94 L.Ed.2d 72, 107 S.Ct. 1013]). In this case, the warrant contained a particularized statement of the object of the search of the Jeep Cherokee: a purse and contents, rug, sofa cushions, pillows, boots, khaki shorts, a polo shirt, car wash receipts, credit cards, checks and indicia of occupancy or ownership. Any and all of these items are of a size and type that they would have been found, if they were in fact in the vehicle, by officers conducting a typical search at the scene.

"At the hearing on defendant's Motion to suppress the officer testified that it was his intention to seize the vehicle and transport it to the crime lab to look for biological evidence like blood, hair, or saliva or traces of the items mentioned in the warrant. . . . [T]he technician who conducted the forensic examination[] indicated that he actually conducted a general search for

fingerprints, trace evidence, and biological evidence. The warrant and affidavit make no mention of the possible existence of fingerprints, hair, fiber or other biological or trace evidence. The magistrate was not asked to consider whether probable cause existed to seize the car as evidence of a crime, and authority to seize and forensically examine the vehicle was not granted in the warrant itself. [']As stated in *Burrows v. Superior Court* (1974) 13 Cal.3d 238, 250 [118 Cal.Rptr. 166, 529 P.2d 590]: [¶] "It is axiomatic that a warrant may not authorize a search broader than the facts supporting its issuance. [Citation.]" "Thus, the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant." (*In re Grand Jury Subpoenas Dated Dec 10, 1987* (9th Cir. 1991) 926 F.2d 847, 857.) This standard carries out the Fourth Amendment's prohibition on general warrants. The vice of a general warrant is that it permits " 'a general, exploratory rummaging in a person's belongings . . . . [Citation.]' " (*Andresen v. Maryland* (1976) 427 U.S. 463, 480 [49 L.Ed.2d 627, 96 S.Ct. 2737].)' (*People v. Hepner* (1994) 21 Cal.App.4th 761, 773–774 [26 Cal.Rptr.2d 417].)

"This warrant does not authorize the police to seize the vehicle for an unspecified and lengthy period of time, and to conduct an unlimited search for fiber or other microscopic evidence. To find otherwise would open the door to general exploratory searches far beyond the reach of the probable cause set forth in any search warrant affidavit.

" 'If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.' (*Horton v. California* (1990) 496 U.S. 128, 140 [110 L.Ed.2d 112, 110 S.Ct. 2301].) The seizure and removal of the Jeep and the resulting forensic examination at another location far exceeded that which was authorized and cannot constitutionally rest upon the warrant issued by the magistrate. Thus, if the seizure and search are to be justified, they must be justified on some other theory."

The superior court was unable to find any alternative theory that would permit introducing the evidence purportedly found in Nasmeh's vehicle. As will be discussed below, the court ruled that the automobile exception to the warrant requirement could not apply because the police had held the car for too long, making a warrantless search and seizure unreasonable. Accordingly, the court granted Nasmeh's motion to suppress the evidence.

The People filed a notice of intention to file a petition for writ of mandate and requested a temporary stay of the trial proceedings. We issued the requested stay on April 13, 2006.

## DISCUSSION

### I. *Forfeiture*

Before turning to the merits, we must resolve Nasmeh's claim that the People did not present to the superior court their contention that the warrant's scope encompassed the seized evidence and have forfeited their Fourth Amendment claim on review.

Nasmeh's claim is unpersuasive. The purpose of forfeiture rules generally is to avoid the unfairness that would occur on review if a party were permitted to "argue the [lower] court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435 [35 Cal.Rptr.3d 644, 122 P.3d 765].) No such unfairness would occur here. The superior court recited at the hearing on the motion to suppress that "the People's position is that . . . the seizure of the vehicle was not outside the scope of the warrant." The court certainly understood that the Jeep Cherokee was seized to search for trace evidence of certain items listed in the warrant once Wahl failed to see those items in a visual inspection of the vehicle. The court must have understood as much, because Nasmeh had argued exactly that point in his memorandum of points and authorities accompanying his motion to quash the search warrant and suppress evidence. Nasmeh argued, "the search warrant here simply did not authorize the police to seize the Jeep, impound it, and then *order* the crime lab to conduct a full search for microscopic trace evidence . . . ." The question was preserved for review, and we turn to the merits of the People's argument.

### II. *Searches and Seizures Under the Warrant*

We now consider whether the search and seizure were within the scope authorized by the warrant.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

### A. *Overbreadth*

The superior court's ruling shows that the court conflated two concepts: overbreadth and particularity. The court was correct, of course, about the unconstitutionality of wide-ranging warrants. The Fourth Amendment was

adopted as a bulwark against the reviled practices of issuing general search warrants and writs of assistance. (See *Atwater v. Lago Vista* (2001) 532 U.S. 318, 339–340 [149 L.Ed.2d 549, 121 S.Ct. 1536]; *United States v. Verdugo-Urquidez* (1990) 494 U.S. 259, 266 [108 L.Ed.2d 222, 110 S.Ct. 1056].) Accordingly, a warrant that fails to "particularly" (U.S. Const., 4th Amend.) describe the evidence sought is unconstitutional. (*Groh v. Ramirez* (2004) 540 U.S. 551, 557 [157 L.Ed.2d 1068, 124 S.Ct. 1284].)

But, contrary to the superior court's reading of the warrant, the warrant here was not overbroad. It sought, in whole or in part, 10 specific items or particularly described groups of items related to Harms's disappearance and Nasmeh's possible involvement—e.g., a blood sample from Nasmeh, two sofa cushions, or Harms's credit cards and personal checks. The court's concerns about "unlimited search[es]," "general exploratory searches," and "wide-ranging exploratory searches" were misplaced, because nothing in the warrant's language authorized any general search.

### B. *Search and Seizure of the Material Inside the Vehicle*

We now turn to another basis for the superior court's decision that the search and seizure exceeded the warrant's scope: the lack of the warrant's specification that the police were to search for and seize material inside Nasmeh's Jeep Cherokee that might, on inspection, be found to constitute trace evidence.

"Whether the description in a warrant of property to be seized is sufficiently definite is a question of law subject to independent review by the appellate court." (*People v. Kraft* (2000) 23 Cal.4th 978, 1041 [99 Cal.Rptr.2d 1, 5 P.3d 68]; accord, *People v. Amador* (2000) 24 Cal.4th 387, 393 [100 Cal.Rptr.2d 617, 9 P.3d 993].) *Kraft* and *Amador* apply to the question before us: the general rule that because the superior court's ruling on the propriety of the search was based on its resolving a mixed question of law and fact that is, however, predominantly legal, we review its determination de novo. (*People v. Alvarez* (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365].) In other words, we "independently apply constitutional principles to the trial court's factual findings in determining the legality of the search." (*People v. Balint* (2006) 138 Cal.App.4th 200, 205 [41 Cal.Rptr.3d 211].)

Reviewing de novo the superior court's analysis and ultimate conclusion that the warrant's description was inadequate, we conclude that the court erred.

When criminal defendants claim that a warrant is too general, they are on firmer constitutional ground than when they claim that an otherwise

valid warrant that properly limits the items of property to be searched for and seized is invalid because terminology further defining the nature and quality of the items is insufficiently precise. A general warrant offends the Fourth Amendment in part because it leaves too much " ' "to the discretion of the officer executing the warrant." ' " (*Andresen v. Maryland, supra*, 427 U.S. 463, 480.) By contrast, " ' "nothing is left to the discretion of the officer executing the warrant" ' " (*ibid.*) when all that may be searched for are components of validly specified items. The officer's discretion is confined to the items or their constituent parts, and if an item is the subject of a valid warrant, searching for part of the item does not confer any discretion on the searching officer to search for something beyond the item. We do not believe that searching for part of a properly sought item would offend the Fourth Amendment in most cases.

Moreover, even if a search for constituent parts of an item did present Fourth Amendment problems because the warrant did not mention such parts, here the warrant authorized the search and seizure of "any part" of the listed items. The question before us is the adequacy of this particular warrant's language, which referred to "part[s]," but did not recite a list of such possible further descriptive terms as fractions, pieces, components, particles, elements, flecks, filaments, films, specks, strands, shards, residues, remnants, samples, subsets, trace amounts, or the like.

▮ "[T]he requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one." (*U.S. v. Peters* (8th Cir. 1996) 92 F.3d 768, 769–770; accord, *People v. Amador, supra*, 24 Cal.4th at p. 393.) The rule against excessive parsing of the language used in a warrant (while retaining the rule that items to be seized be identified in a warrant with constitutionally required specificity, so that the police do not engage in unfettered rummaging through a person's effects) militates in favor of truthfinding in criminal investigations, a value of significant importance to the public safety and societal order. Nasmeh argues that the warrant's " 'any part thereof' " specification refers only to "any subset of the named items on the list," e.g., a single credit card or one sofa cushion, rather than a constituent part of a single identified item. This kind of linguistic scrutiny might be warranted in a case construing a contract negotiated and signed by sophisticated parties whose counsel examined the placement of each comma and semicolon and who included language to cover any conceivable eventuality. A warrant's language involves different considerations and requires less absolute certainty of linguistic meaning. " '[T]he purpose of the exclusionary rule is ". . . to deter illegal police conduct, not deficient police draftsmanship." ' " (*People v. Amador, supra*, 24 Cal.4th at p. 392.) Moreover, the draftsmanship here was not deficient, just not as exhaustive as Nasmeh would prefer.

## C. *Seizure of the Vehicle*

We next turn to whether the seizure of Nasmeh's Jeep Cherokee offended the Fourth Amendment. We conclude that it did not.

█ ·Notwithstanding the superior court's ruling that "authority to seize and forensically examine the vehicle was not granted in the warrant," the police did not violate the Fourth Amendment in seizing Nasmeh's Jeep Cherokee. The vehicle could not have been properly searched without being seized, and it would vitiate the state's power to execute a lawful search if the object of the search could not be seized for a reasonable time to prevent the loss or destruction of evidence pending the search. (See *Dixon v. Wallowa County* (9th Cir. 2003) 336 F.3d 1013, 1018 ["But for the seizure, [a resident] would have successfully removed property from the residence."]; see also *Illinois v. McArthur* (2001) 531 U.S. 326, 328, 330–333 [148 L.Ed.2d 838, 121 S.Ct. 946] [police could briefly seize residential premises for the time needed to obtain a search warrant].) In sum, a valid warrant to search a vehicle brings with it authorization to seize it for the time reasonably needed to undertake the lawful search.

And contrary to the superior court's view, taking Nasmeh's seized vehicle to the crime laboratory to search for and conduct a scientific analysis of trace items did not offend the Fourth Amendment. In *People v. Talbot* (1966) 64 Cal.2d 691 [51 Cal.Rptr. 417, 414 P.2d 633], overruled on other grounds in *People v. Ireland* (1969) 70 Cal.2d 522, 540 [75 Cal.Rptr. 188, 450 P.2d 580], and *People v. Wilson* (1969) 1 Cal.3d 431, 442 [82 Cal.Rptr. 494, 462 P.2d 22], our Supreme Court rejected a claim of unlawful search and seizure "predicated on the fact that the automobile was removed from the. scene and the trunk opened and searched subsequently." (*People v. Talbot, supra*, at p. 708.) Discovery of blood on the automobile and other circumstances warranted transporting it "for a later, more scientific examination." (*Ibid.*)[4]

---

[4] Instructive on this point is *State v. Petrone* (1991) 161 Wis.2d 530 [468 N.W.2d 676], overruled on another ground in *State v. Greve* (2004) 272 Wis.2d 444, 465, fn. 7 [681 N.W.2d 479]. In *Petrone*, the defendant asserted that even if a warrant included rolls of undeveloped film, "developing the film later at the police station was a second, separate search for which a warrant should have been obtained." (468 N.W.2d at p. 681.) *Petrone* rejected the claim, stating: "A search warrant does not limit officers to naked-eye inspections of objects lawfully seized in the execution of a warrant. [¶] Developing the film is simply a method of examining a lawfully seized object. Law enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant. For example, blood stains or substances gathered in a lawful search may be subjected to laboratory analysis. [Citation.] The defendant surely could not have objected had the deputies used a magnifying glass to examine lawfully seized documents or had enlarged a lawfully seized photograph in order to examine the photograph in greater detail. Developing the film made the information on the film accessible, just as laboratory tests expose what is already present in a substance but not visible with the naked eye. Developing the film did not constitute, as the defendant asserts, a separate,

The Fourth Amendment, for example, does not require the state to have equipment and personnel on hand at, or trundle them to, the shoulder of a busy freeway for a sophisticated search of a vehicle for trace evidence. "[I]f the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle." (*California v. Acevedo* (1991) 500 U.S. 565, 570 [114 L.Ed.2d 619, 111 S.Ct. 1982].) The vehicle can be taken to a crime laboratory for the time reasonably needed to undertake and complete the search. (See also *United States v. Johns* (1985) 469 U.S. 478, 480, 484 [83 L.Ed.2d 890, 105 S.Ct. 881] [regarding warrantless search of packages after they were later, and in a different location, removed from seized vehicles that police had probable cause to believe contained contraband, "officers acted permissibly by waiting until they returned to . . . headquarters before they searched the vehicles and removed their contents," for "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure"].)

### D. *Time Taken to Complete Execution of the Warrant*

The next question that arises is whether the time taken to complete the execution of the search warrant violated the Fourth Amendment. We conclude that it did not.

The superior court based its ruling in part on the length of time it took to complete the execution of the search warrant. It ruled that the "warrant does not authorize the police to seize the vehicle for an unspecified and lengthy period of time." Because this ultimate determination was based on resolving a mixed question of law and fact that is, however, predominantly legal, we review it de novo. (*People v. Alvarez, supra,* 14 Cal.4th 155, 182; *People v. Balint, supra,* 138 Cal.App.4th 200, 205.)

---

subsequent unauthorized search having an intrusive impact on the defendant's rights wholly independent of the execution of the search warrant. The deputies simply used technological aids to assist them in determining whether items within the scope of the warrant were in fact evidence of the crime alleged. Because the undeveloped film was lawfully seized pursuant to the warrant, the deputies were justified in developing and viewing the film." (*Id.* at p. 681, fn. omitted.)

Similarly, the police here were entitled to use technology to determine the evidentiary value of trace materials possibly coming from an item listed in the warrant and purportedly found in Nasmeh's car. "The seizure of [listed items] is within the plain language of the warrant; their recovery, after attempted destruction, is no different than decoding a coded message lawfully seized or pasting together scraps of a torn-up ransom note. [Citations.] The . . . warrant did not prescribe methods of recovery or tests to be performed, but warrants rarely do so. The warrant process is primarily concerned with identifying *what* may be searched or seized—not how—and *whether* there is sufficient cause for the invasion of privacy thus entailed." (*U.S. v. Upham* (1st Cir. 1999) 168 F.3d 532, 537.)

In this, too, the superior court erred. The warrant was dated August 3, 2001. According to Wahl's testimony at the suppression hearing, the next day, August 4, he searched Nasmeh's vehicle for obvious and gross evidence that any of the warrant's listed items were present, and found nothing. Believing that the warrant authorized a search for trace evidence he could not see, Wahl arranged for the vehicle to be delivered to the Santa Clara County crime laboratory, and it arrived there on August 10. Apparently the key to the Jeep could not be located and arrangements had to be made to have the car unlocked by a towing company. Once this was done, a criminalist was able to examine the vehicle, and he processed it on August 14 and 15, 2001. The vehicle was released to a police detective on August 23, and reclaimed on behalf of Nasmeh on August 28. The key to the vehicle was found several years later in Wahl's police locker; he had misplaced it there and had forgotten to send it along with the vehicle to the crime laboratory.

██ There was no constitutional violation in this case. As a general proposition, " '[t]he Fourth Amendment does not specify that search warrants contain expiration dates.' " (*U.S. v. Sims* (10th Cir. 2005) 428 F.3d 945, 955.) "[C]ompleting a search shortly after the expiration of a search warrant"—a time period governed in this state by section 1534—"does not rise to the level of a constitutional violation and cannot be the basis for suppressing evidence seized so long as probable cause continues to exist, and the government does not act in bad faith." (*U.S. v. Gerber* (11th Cir. 1993) 994 F.2d 1556, 1560.) On independent review, we find that, in light of the alleged facts surrounding Harms's disappearance and Officer Wahl's testimony, probable cause continued to exist when the search of Nasmeh's vehicle was completed on August 15, 12 days after the warrant issued. And there is no showing of bad faith. Wahl expeditiously executed the warrant by visually searching Nasmeh's vehicle the day after the warrant issued. To complete the search, the authorities needed to conduct an examination of the vehicle's interior for evidence not visible to Wahl. Wahl inadvertently misplaced the vehicle's key, and evidently, rather than simply breaking into Nasmeh's car and damaging it, the authorities secured the services of a towing company to gain entry to the vehicle's interior. Despite all of these factors, the search was completely executed 12 days after the warrant issued. Under similar facts, the *Gerber* court found no constitutional violation. (*Id.* at p. 1557 [automobile search not completed until next business day following warrant's expiration; one reason for the delay was that "[r]ather than damaging the car, the agents decided to wait . . . to obtain the assistance of an automobile mechanic in

opening the hood"]; *id.* at p. 1561 [reversing order granting motion to suppress].) The time taken to completely execute the warrant did not result in a violation of the Fourth Amendment.[5]

### E. The Warrant Authorized the Searches and Seizures

■ In sum, the state of the law convinces us that the superior court erred in granting the motion to suppress insofar as it found the warrant incompatible with the searches and seizures performed by the state.

### III. Warrantless Search Under the Automobile Exception

The People also assert that the police need not have sought a warrant in the first place if probable cause existed to search the vehicle.

■ We agree. When the police have probable cause to believe an automobile contains contraband or evidence they may search the automobile and the containers within it without a warrant. (*California v. Acevedo, supra,* 500 U.S. at p. 580.) The " 'specifically established and well-delineated' " (*Mincey v. Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 98 S.Ct. 2408]) automobile exception to the Fourth Amendment's warrant requirement is rooted in the historical distinctions between the search of an automobile or other conveyance and the search of a dwelling. (*California v. Acevedo, supra,* at p. 569.) In *Carroll v. United States* (1925) 267 U.S. 132, 153 [69 L.Ed. 543, 45 S.Ct. 280], the Supreme Court recognized "a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

■ It is also well established that " '[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause.' " (*California v. Acevedo, supra,* 500 U.S. at p. 570.) " '[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the

---

[5] The warrant specified that the searches it authorized were to occur "in the daytime," but did not set a time limit for executing the searches. Section 1534, however, requires that a search warrant be executed and returned within 10 days after its issuance date. It also provides, without again mentioning return, that "[a]fter the expiration of 10 days, the warrant, unless executed, is void."

Nasmeh does not invoke section 1534 in this court, nor does he state in his return that he did so in the superior court. Accordingly, we need not discuss the implications of the statutory requirements set forth in section 1534.

vehicle and its contents that may conceal the object of the search.' " (*Ibid.*) In addition, and as noted, "if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle." (*Ibid.*)

In the case of a warrantless search and seizure, the burden of proof rests on the People to show that the search and seizure were reasonable under the Fourth Amendment. (*People v. Williams* (1999) 20 Cal.4th 119, 128, 130 [83 Cal.Rptr.2d 275, 973 P.2d 52].) As a reviewing court, "[w]e exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119 [12 Cal.Rptr.3d 592, 88 P.3d 498].) For the reasons set forth in this opinion, we hold that the search and seizure were reasonable under the automobile exception to the warrant requirement. In particular, based on his training and experience, Officer Wahl suspected that valuable trace evidence might be found in Nasmeh's vehicle. His affidavit averred that he knew that "people who commit murder and transport their victims in their vehicles may, in an attempt to conceal their guilt, try to clean their vehicle in an attempt to conceal or rid the vehicle of incriminating evidence." That averment, coupled with the mobility of the Jeep Cherokee and the accompanying risk that any trace evidence might be lost, sufficed to make the search and seizure reasonable under the Fourth Amendment even if there had been a constitutional problem with the search and seizure under the warrant issued by the magistrate.

As noted, the superior court concluded that delay in returning Nasmeh's automobile to him made the search and seizure unreasonable. "Instead of conducting either a prompt, on-scene search of the vehicle or a prompt off-scene search at a police station or laboratory facility, the officers seized the vehicle for a search that did not take place until 10 days later. The vehicle was retained by police for 24 days, even though the evidence shows that only one or possibly two days were required to conduct the entire search, and no justification was given for the additional 22 days that defendant was deprived of use and possession of the Jeep. The officers had and took the opportunity to obtain a warrant, and yet, inexplicably they failed to seek a magistrate's approval for a lengthy, intensive seizure and search of Defendant's vehicle."

In fact, however, the length of time during which the police held Nasmeh's Jeep Cherokee did not make the search unreasonable. "Not a single published federal case speaks of a 'temporal limit' to the automobile exception. The Supreme Court has repeatedly stated that a warrantless search of a car (1) need not occur contemporaneously with the car's lawful seizure and (2) need not be justified by the existence of exigent circumstances that might have made it impractical to secure a warrant prior to the search. [Citations.]

Therefore, the passage of time between the seizure and the search of [a] car is legally irrelevant." (*U.S. v. Gastiaburo* (4th Cir. 1994) 16 F.3d 582, 587.) In *Gastiaburo*, a warrantless search of an automobile occurred 38 days after its impoundment, when the police received a tip about a secret compartment. The car had earlier been impounded under a forfeiture statute when the defendant was arrested and a search of the car revealed drugs, drug paraphernalia, and money. (*Id.* at pp. 584–585.) *Gastiaburo* held that the search was constitutional under the Fourth Amendment. (16 F.3d at p. 587.)

There is no claim here, nor was evidence presented below, that Nasmeh requested return of his car or objected to its seizure at any time. Nasmeh emphasizes that the superior court made a factual finding that the prosecution's evidence failed to explain or justify the duration of the seizure of the Jeep. But the findings of fact made by the court concern the specific dates on which certain events occurred as well as what actually happened. We review these findings under the deferential substantial evidence standard. (*People v. Alvarez, supra,* 14 Cal.4th 155, 182.) Whether in fact the search and seizure themselves were reasonable under the proscriptions of the Fourth Amendment is a question of law on which we exercise independent review. (*People v. Lenart, supra,* 32 Cal.4th at p. 1119.)

The duration of the search was reasonable. The police were investigating Harms's disappearance. It was possible that she had been kidnapped or murdered. There was little or no direct evidence and apparently there were no eyewitnesses. The evidence technician testified that the key to the seized vehicle was missing and he could not gain immediate access to it. Moreover, the police held the vehicle for almost two weeks after completing their search, and Nasmeh does not allege in his return when he first sought the vehicle's return, if he did at all; rather, in his argument accompanying his return, he states that the questions of "what prompted the release of the Jeep or . . . whether or when [Nasmeh] sought to regain possession of his vehicle" were not addressed in the proceedings before the superior court. The record does not give us the impression that Nasmeh needed to regain possession of his vehicle with any urgency. In light of the serious nature of the possible crimes and the complexity of the investigation, we cannot agree with the superior court's legal conclusion that the police held Nasmeh's vehicle for too long.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting Nasmeh's motion to suppress evidence purportedly taken from his Jeep Cherokee and to enter a new order denying the motion. In the interests of justice, this opinion is made final immediately on filing

with regard to this court. (Cal. Rules of Court, rule 8.264(b)(3).) This court's order of April 13, 2006, temporarily staying the trial proceedings, is vacated.

Bamattre-Manoukian, Acting P. J., concurred.

**MIHARA, J.,** Concurring.—While I agree with my colleagues that the superior court erred in suppressing the evidence, my reasoning is significantly different. I believe that the warrant in this case may not properly be interpreted, consistent with the United States Constitution, to authorize both the seizure of Maurice Xavier Nasmeh's vehicle and the intensive search for trace evidence to which the vehicle was subjected. Nevertheless, I am convinced that the seizure and search of the vehicle was valid under the automobile exception to the warrant requirement and was not rendered unreasonable by the 10-day delay between the seizure of the vehicle and the search.

### I.   Search Warrant

On August 3, 2001, a search warrant was issued authorizing the search of Nasmeh's home, person, and vehicle for 10 items of particularly described property. While the 10 items included "2-Sofa cushions white in color with blue pin-stripes" and a "Floor rug described as being mostly blue Persian style wool rug with a tag on the back," the descriptions in the warrant of the items to be seized did not mention fibers or "trace" evidence of any kind. The warrant also did not authorize the seizure of Nasmeh's vehicle. All of the described items to be seized (other than a sample of Nasmeh's blood) were recognizable physical objects. Following the warrant's listing of the places to be searched and the objects to be seized, the warrant stated: "AND if you find the same or any part thereof, to hold such property in your possession under California Penal Code section 1536."

#### A.   Probable Cause to Support Warrant

Nasmeh challenged the warrant as unsupported by probable cause. The superior court rejected this challenge. Nasmeh renews this contention before this court as an alternative basis for denial of the People's petition.

"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " (*Illinois v. Gates* (1983) 462 U.S. 213, 236 [76 L.Ed.2d 527, 103 S.Ct. 2317], quoting *Spinelli v. United States* (1969) 393 U.S. 410, 419 [21 L.Ed.2d 637, 89 S.Ct. 584].) "Reflecting this preference for the warrant process, the traditional

standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." (*Illinois v. Gates*, at p. 236, quoting *Jones v. United States* (1960) 362 U.S. 257, 271 [4 L.Ed.2d 697, 80 S.Ct. 725].)

"Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (*United States v. Ventresca* (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 85 S.Ct. 741].) Where the affidavit provides sufficient information to enable the magistrate to act independently rather than merely ratifying the conclusions of the affiant, the affidavit is not legally insufficient. (*Illinois v. Gates, supra,* 462 U.S. at p. 239.) "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Id.* at p. 238.) "On review, we bring to bear the same standard which governed the trial court: the magistrate's order issuing the warrant may be set aside only if the affidavit, as a matter of law, does not establish probable cause." (*People v. Superior Court (Corona)* (1981) 30 Cal.3d 193, 203 [178 Cal.Rptr. 334, 636 P.2d 23].)

The affidavit in support of the search warrant set forth the following facts. Nasmeh was the last known person to see Jeanine Harms before she and some of her property disappeared from her home. Harms's friends confirmed that Harms's disappearance strongly suggested that she was dead or had been kidnapped. Nasmeh left Harms's home in his vehicle shortly after Harms was last known to be alive, and neither Harms nor her property had been seen since. No one else was known to have been at Harms's home near the time of her disappearance.

Under these circumstances, a magistrate could conclude that it was fairly probable that Nasmeh's vehicle had been used to transport Harms (or her body) and her property away from her home and therefore that some of the missing items might yet be found in Nasmeh's vehicle. It follows that the warrant validly authorized a search of Nasmeh's vehicle for the items particularly described in the warrant.

### B. Scope of Warrant

Although the warrant validly authorized a search of Nasmeh's vehicle for the items particularly described in the warrant, Nasmeh asserted, and the superior court agreed, that the actual *seizure* of his vehicle and the search of it *for fibers and trace evidence* was beyond the scope of the warrant. I agree.

"If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more." (*Horton v. California* (1990) 496 U.S. 128, 140 [110 L.Ed.2d 112, 110 S.Ct. 2301].) The Fourth Amendment requires a search warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.; see also Cal. Const., art. I, § 13; Pen. Code, § 1525.) "The requirement of particularity is designed to prevent general exploratory searches which unreasonably interfere with a person's right to privacy. (*Marron v. United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74].) The Penal Code [too] demands reasonable particularity (Pen. Code, § 1529), and this requirement is held to be satisfied if the warrant imposes a meaningful restriction upon the objects to be seized." (*Burrows v. Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590]; accord, *People v. Balint* (2006) 138 Cal.App.4th 200, 205–206 [41 Cal.Rptr.3d 211].) " ' "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." ' " (*Andresen v. Maryland* (1976) 427 U.S. 463, 480 [49 L.Ed.2d 627, 96 S.Ct. 2737].) "Whether the description in a warrant of property to be seized is sufficiently definite is a question of law subject to independent review by the appellate court." (*People v. Kraft* (2000) 23 Cal.4th 978, 1041 [99 Cal.Rptr.2d 1, 5 P.3d 68].) When the claim is that a search during the execution of a search warrant was beyond the scope of the warrant, the claimant bears the burden of proof. (*People v. Reyes* (1990) 223 Cal.App.3d 1218, 1224 [273 Cal.Rptr. 61].)

My colleagues reject Nasmeh's challenge to the scope of the search and seizure on the ground that the warrant's inclusion of the words "any part thereof" authorized a search for fibers and trace evidence. I do not agree with this analysis.

The words "any part thereof" are part of the *standard form search warrant* prescribed by Penal Code section 1529. The "any part thereof" language is *not* affixed to the *description of the property to be seized,* but instead is a portion of the language regarding the *return* of the warrant. "The warrant shall be in substantially the following form: [¶] . . . [¶] . . . [you are authorized to search a particular described place] for the following property, thing, things, or person: (describing the property, thing, things, or person with reasonable particularity); and, in the case of a thing or things or personal property, if you find the same *or any part thereof,* to bring the thing or things or personal property forthwith before me (or this court) at (stating the place)." (Pen. Code, § 1529, italics added.)

The mere use of the statutorily prescribed form for the search warrant did not expand its scope to include unrecognizable particles (fibers and other trace evidence) since the warrant failed to provide the searching officers with

any guide to determining whether any trace "thing" they were seizing fell within the scope of the warrant. Indeed, nearly any item in the vehicle potentially could have harbored an unrecognizable trace of one of the described items in the warrant. Consequently, if my colleagues were correct, this warrant (and any other warrant using the statutorily prescribed form) would authorize the seizure of 100 percent of the contents of the place to be searched, even though the searching officers would have no way of distinguishing between those items that were within the scope of the warrant and those that were not.

I do not question that a properly supported warrant could explicitly authorize a search for particularly described traces of specific items. However, *this* warrant did *not* particularly describe *traces* of the specified items as among the objects of the search, and the warrant's inclusion of the standard "any part thereof" language in its command regarding the *return* did not provide a "meaningful restriction" on the scope of the search that limited the discretion of the searching officers. This warrant cannot be constitutionally and logically interpreted to permit seizure of unrecognizable traces that are not particularly described in the warrant as the object of the search. If it did, it would authorize precisely the type of general exploratory search that the Fourth Amendment was intended to bar.

Obviously, this warrant validly authorized a search for, and seizure of, the items listed, and any *readily identifiable* pieces of those items that the officers discovered in plain view during their search for the particularly described items. Had an officer seen in the vehicle an object that was readily recognizable as a piece of the particularly described rug, the Fourth Amendment would *not* be offended by the officer's seizure of that item. However, the indiscriminate seizure of fiber evidence from the vehicle was not within the scope of the warrant.

## C.   Good Faith

The People did not establish that the seizure and search of the vehicle was done in good faith reliance on the warrant.

"This exception provides that evidence obtained in violation of the Fourth Amendment need not be suppressed where the officer executing the warrant did so in objectively reasonable reliance on the warrant's authority. The test for determining whether the exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " (*People v. Hulland* (2003) 110 Cal.App.4th 1646, 1653 [2 Cal.Rptr.3d 919].)

Steve Wahl, the officer who executed the search warrant, testified that he believed that "when the Jeep was listed in the search warrant as a place to be searched, that I would be afforded the opportunity to search for those items or any part thereof, *and any additional trace evidence* either at the location at the residence or at the crime lab. That didn't limit me to where I would be able to search that vehicle." (Italics added.) Wahl believed that he had a right to transport the vehicle to another location to search it. The crime lab was the "only place" where Wahl believed a search for biological and trace evidence could be performed. Wahl was not involved in the eventual thorough search of the vehicle. Wahl merely sealed the vehicle and ordered it transported to the crime lab.

Eric Barloewen, the criminalist who searched the vehicle at the crime lab, never saw the warrant. He merely processed the vehicle thoroughly, looking for biological and other trace evidence, pursuant to a form request that asked him to "process the vehicle for any evidence." Barloewen performed a "blind sampling" of various locations "just hoping to collect, you know, as much evidence as possible."

A reasonably well-trained officer would have understood that the warrant did not authorize a search for anything other than the particularly described items, which did not include fibers or other trace evidence. Wahl's belief that the warrant authorized the seizure and thorough search of the vehicle was not objectively reasonable because it was not based on anything in the warrant that even suggested that he was authorized to *seize* the vehicle, rather than merely search it, or anything in the warrant that appeared to authorize a search for and seizure of trace evidence. Barloewen's search was not done in reliance on the warrant at all. Since Wahl could not have had a good faith belief that the warrant authorized the seizure of the vehicle and a thorough search for biological and other trace evidence, and Barloewen did not rely on the warrant, the good faith exception to the warrant requirement is not applicable here.

## II.   Warrantless Search

### A.   Automobile Exception

"The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." (*California v. Acevedo* (1991) 500 U.S. 565, 580 [114 L.Ed.2d 619, 111 S.Ct. 1982].) "One of the circumstances in which the Constitution does not require a search warrant is when the police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime." (*Arkansas v. Sanders* (1979) 442 U.S. 753, 760 [61

L.Ed.2d 235, 99 S.Ct. 2586].) In *Florida v. White* (1999) 526 U.S. 559 [143 L.Ed.2d 748, 119 S.Ct. 1555], the United States Supreme Court held that an automobile could be lawfully seized without a warrant based on probable cause to believe that the automobile had been used in the commission of a felony. (*White*, at pp. 564–566.) In *White*, the automobile was not stopped on the street, but was seized from a public parking lot. (*White*, at p. 566.)

The critical limitation on the automobile exception to the warrant requirement is the requirement of probable cause. Here, probable cause supported a thorough search of the vehicle. "The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." (*United States v. Ross* (1982) 456 U.S. 798, 823 [72 L.Ed.2d 572, 102 S.Ct. 2157].) Wahl's affidavit in support of the warrant was sufficient to support probable cause to search for fibers and biological and other trace evidence that might have been left in the vehicle after the disposal of the property and Harms's body. If Harms and her property were transported in the vehicle, there was a fair probability that a trace of Harms's body or her property would be found in the vehicle.

## B.   Duration of Seizure

The superior court found that the automobile exception was applicable and that probable cause supported a seizure and search of Nasmeh's vehicle, but it also found that the search was unreasonable because the vehicle was seized and detained for an unreasonable period of time prior to the search. This is the dispositive issue in this case.

"[A]ny examination of a seized automobile *is* a search and therefore must be reasonable under the Fourth Amendment." (*People v. Minjares* (1979) 24 Cal.3d 410, 422 [153 Cal.Rptr. 224, 591 P.2d 514].) "We do not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search. [Citation.] Nor do we foreclose the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest." (*United States v. Johns* (1985) 469 U.S. 478, 487 [83 L.Ed.2d 890, 105 S.Ct. 881].)

The superior court concluded that the vehicle search was unreasonable because the lengthy delay after the seizure of the vehicle had adversely affected Nasmeh's possessory interest in the vehicle. The court made a number of factual findings. It found that Nasmeh's vehicle had been seized on the day of the search (August 4), but it had not arrived at the crime lab for six days. The vehicle remained there for five more days before it was

searched. It was not released to Nasmeh for another 13 days. "The vehicle was retained by police for 24 days, even though the evidence shows that only one or possibly two days were required to conduct the entire search, and no justification was given for the additional 22 days that defendant was deprived of use and possession of the Jeep." "Defendant was not under arrest and, therefore, . . . had a significant possessory interest in the vehicle upon [sic] which was infringed upon for 24 days without justification." "Therefore, under the unique facts of this case, the duration of the seizure and the resulting interference with defendant's rights of possession, without explanation or justification, was [sic] unreasonable and a violation of Defendant Nasmeh's Fourth Amendment right to be free from unreasonable search *and seizure*."

The superior court's factual findings must be upheld if supported by substantial evidence. (*People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961].) On the legal issue of " 'whether, on the facts found, the search was unreasonable within the meaning of the Constitution,' " we exercise our independent judgment. (*Id.* at p. 597.) A warrantless search is presumptively unreasonable, and the People bear the burden of proving that the search was reasonable. (*People v. Williams* (1999) 20 Cal.4th 119, 127 [83 Cal.Rptr.2d 275, 973 P.2d 52].)

The superior court's factual findings are supported by substantial evidence. Wahl executed the search warrant on August 4, 2001. Nasmeh provided Wahl with the keys to the vehicle, which was parked in Nasmeh's driveway. Wahl briefly looked inside of the vehicle "[f]or any of the items listed in the search warrant or any obvious evidence of a crime of murder." He saw "[n]othing immediately apparent" that appeared to be evidence of a homicide. Wahl did not instruct an evidence technician to take "tape lifts" at the scene of the search even though such "tape lifts" could have been taken "in the field."[1] Instead, he sealed the vehicle and "ordered it to be sent to the county crime lab" so that a "thorough search" could be done to collect biological or other "trace" evidence.

The search of the vehicle at the crime lab took place on August 14 and 15. When the vehicle was received by the crime lab, it was locked and sealed. Barloewen, the criminalist who searched the vehicle, contacted the Los Gatos Police Department on August 14 seeking keys or access to the interior. Access was gained on August 15 when a towing company employee opened the vehicle.[2] On August 15, Barloewen "processed the interior for biological

---

[1] Wahl gave inconsistent testimony about whether an evidence technician was available on the scene of the search to perform tape lifts.

[2] Wahl had somehow misplaced the key to the vehicle. He found the key in his police locker in 2005.

evidence, trace evidence" and "fingerprint evidence . . . ." The vehicle was released by the crime lab to a Los Gatos Police detective on August 23 and could have been released to Nasmeh as of that date. The Los Gatos Police Department released the vehicle to Nasmeh's representative on August 28. The People offered no evidence to explain or justify the delay between the August 4 seizure of the vehicle and Barloewen's August 14 commencement of work on the search of the vehicle.

Since the superior court's factual findings are supported by substantial evidence, the only question remaining is whether the superior court erred in concluding that the unjustified 10-day delay[3] between the seizure of Nasmeh's vehicle and the search rendered the search unreasonable as a matter of law. The People bore the burden of proving that the search was reasonable, and it is evident that the People failed to attempt to establish any justification for the delay.

Nevertheless, I am convinced that the 10-day delay did not render the search unreasonable. "[T]he 'touchstone of the Fourth Amendment is reasonableness.' [Citation.] Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (*Ohio v. Robinette* (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347, 117 S.Ct. 417].) When the totality of the circumstances are considered here, the 10-day delay between the seizure of Nasmeh's vehicle and the search does not dictate a finding that the search was unreasonable.

Harms had been missing for about a week when the search warrant was obtained, and Nasmeh was well aware that he was under suspicion. The police clearly had probable cause to believe that Nasmeh's vehicle contained evidence related to Harms's disappearance. Nasmeh cooperated with the police by providing them with the keys to his vehicle, and there is no evidence that he ever protested its seizure or tried to obtain its return during the 10-day delay. Indeed, even after the vehicle was available for release to him, Nasmeh did not immediately seek to retake possession of it. Although it may be inconvenient to be deprived of one's vehicle for 10 days, such a deprivation is neither serious nor uncommon. Automobiles are frequently incapacitated for such periods due to mechanical breakdowns and the need for repairs. While there is no doubt that Nasmeh's possessory interest in the vehicle was impacted by the 10-day delay, I am convinced that the totality of the circumstances supports a finding that this fairly brief deprivation of possession did not render unreasonable an otherwise timely and well justified search of the vehicle.

---

[3] I fail to see how the detention of the vehicle after the search could possibly justify a finding that the search itself was unreasonable. Logic dictates that the reasonableness of the search could not depend on subsequent events. Nasmeh conceded at oral argument that the relevant period was 10 days long.

### III.   Conclusion

While my analysis is different, I agree with my colleagues that the People's petition should be granted.

The petition of real party in interest for review by the Supreme Court was denied June 20, 2007, S153185.