Filed 8/11/16  P. v. Brixey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062957 |
| v. | (Super.Ct.No. FWV1401700) |
| TYLER ROBERT BRIXEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Law Offices of Margis Matulionis and Margis Matulionis, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

Following the denial of a motion to suppress evidence, defendant Tyler Robert Brixey pled guilty to first degree residential burglary (Pen. Code, § 459)[1] and was sentenced to the lower term of two years in state prison. Defendant contends that his motion to suppress the evidence of stolen items found in his car was improperly denied. We disagree.

I

FACTUAL BACKGROUND

1.      The Search of Defendant's Car

At 6:26 p.m. on May 13, 2014, a San Bernardino County sheriff's deputy responded to a report of a residential burglary in Chino Hills. When she arrived at the house, she spoke with the victim, who told her that he was missing a laptop, a Wii gaming system, two iPod boxes, an XM radio and docking station, and a black canvas Buffalo Wild Wings bag. The deputy observed what "appeared to be a break in into [the victim's] bedroom."

The deputy learned[2] that defendant had been a guest of the victim's sister/roommate the day before. When she discovered that defendant was intoxicated, the sister took his car key and told him to sleep in his car, which was parked across the street. The sister locked the front and security doors of the house but left a window open

---

[1] All further statutory references are to the Penal Code.

[2] The victim showed the deputy text messages from his sister that explained the circumstances of defendant's stay in the house.

because she did not know if the victim had a key to the security door. When the sister left the house the morning of May 13, defendant was still sleeping in his car.

The sister sent the victim a series of texts explaining the situation to him and left defendant's car key with their mother. In response, the victim asked the mother to check on the house. The mother took defendant's car key and went to the house, where she found "damage" to the victim's bedroom door. She told the victim that it appeared items were missing but that she did not know what because it was not her house. The mother left the car key on a counter in the house.

The victim showed the deputy the car, which she verified belonged to defendant. The victim suspected that defendant had stolen the items and surmised that they were still in the car because the victim had defendant's car key and defendant had no means to move the car. The victim did not know defendant and did not feel comfortable "check[ing]" the car without a police presence.

The deputy looked in the car through a window and saw a sweatshirt spread over "a mountain of items" on the front passenger floorboard. The pile under the sweatshirt appeared large enough to contain all of the stolen items. A seven- by four-inch swatch of black canvas material was visible sticking out from under the sweatshirt. The victim told the deputy, " 'I believe that is my bag.' "

The deputy decided to open the locked car using the key supplied by the victim because of "the totality of the situation" and because in the time that it could take to get a search warrant from an on-call judge, defendant might have been able to return and move

the car with another key. The deputy found the victim's black Buffalo Wild Wings bag, laptop, and XM radio under the sweatshirt. She also found the two iPod boxes in the trunk. The deputy "just chose not to" call for an impound which would have prevented defendant from moving the car.[3]

2.     Trial Court's Denial of Suppression Motion

In support of his suppression motion, defendant argued that the deputy lacked probable cause for a warrantless search and that the plain view doctrine did not apply in this case because nothing in the car was of an " 'immediately apparent' " incriminating character. In opposition, the prosecutor argued that the deputy had probable cause to believe that the items in the car and specifically the black canvas bag were the items stolen from victim. The prosecutor argued that the incriminating nature of the items fell into the "immediately apparent" category, which does not require certainty.

When denying the suppression motion, the trial court found that the facts known to the deputy at the time of the search constituted probable cause for her to believe that the victim's stolen items were in defendant's car. Specifically, the court noted the following facts that produced a totality of the circumstance support for probable cause: (1) there was a disagreement between the sister and defendant and defendant acted inappropriately and was told to leave; (2) the sister and the victim had defendant's car key; (3) the sweatshirt appeared to be intentionally laid out to cover the items on the front passenger's

---

[3] Although there was some testimony at the suppression hearing about a neighbor's observations, the deputy had not yet spoken to the neighbor when she made the decision to enter the car.

floorboard; (4) the victim saw the black canvas material and thought that it was his bag, a "fairly trustworthy" identification given that the victim was the owner of the bag; (5) the pile of items under the sweatshirt was consistent with the type and amount of stolen items; and (6) the pile of items was on the floorboard rather than the seat. The court also noted that the deputy reasonably explained why she did not seek a warrant because it was evening and would have been time consuming to contact an on-call judge when she did not know if defendant might return and drive the car away, and that it was inconvenient to impound the car.

II

DISCUSSION

Defendant contends that the deputy did not have probable cause to believe that there was evidence of criminality in the car and that the trial court improperly denied his motion to suppress the evidence found therein. We disagree.

The Fourth Amendment protects against unreasonable searches and seizures, and generally requires that a warrant be issued before a search or seizure. (*Texas v. Brown* (1983) 460 U.S. 730, 735.) However, under the automobile exception, police who have probable cause to believe a vehicle contains evidence of criminal activity may conduct a warrantless search of any area of the vehicle in which the evidence might be found. (*Arizona v. Gant* (2009) 556 U.S. 332, 347; *United States v. Ross* (1982) 456 U.S. 798, 820-821.) The automobile exception applies to unoccupied parked cars. (*People v. Hochstraser* (2009) 178 Cal.App.4th 883, 891, 903-905 [police properly searched parked

5

car for evidence of missing person without warrant under automobile exception, even though officers had the car key and the defendant could not move the car]; *People v. Superior Court (Nasmeh)* (2007) 151 Cal.App.4th 85, 89, 100-101 [police properly searched parked car for evidence of crime regardless of warrant under automobile exception]; see *California v. Carney* (1985) 471 U.S. 386, 392-393 ["[w]hen a vehicle is [readily capable of] being used on the highways . . and is found stationary . . . the [] justifications for the vehicle exception come into play"].)

Additionally, under the plain view doctrine, if a police officer has probable cause to believe an item that is in plain view through an automobile window is evidence of criminal activity, seizure of the item does not run afoul of the Fourth Amendment. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 375; *People v. Gallegos* (2002) 96 Cal.App.4th 612, 623; see *People v. Lomax* (2010) 49 Cal.4th 530, 564 [plain view doctrine allowed police to enter and seize gun seen through car window].)

Probable cause is defined as " 'a fair probability that contraband or evidence of a crime will be found.' " (*Alabama v. White* (1990) 496 U.S. 325, 330.) Probable cause to search thus exists when, under the totality of the circumstances, the "known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that . . . evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696 (*Ornelas*); *People v. Farley* (2009) 46 Cal.4th 1053, 1098.) The standard is a " ' "fluid concept—turning on the assessment of probabilities in particular factual contexts," ' " and is incapable of precise definition. (*People v. Thompson* (2006) 38

6

Cal.4th 811, 818.) On appeal, we apply the substantial evidence review to the trial court's finding of facts, but determine probable cause de novo. (*Ornelas*, *supra*, at pp. 696-698; *People v. Ayala* (2000) 24 Cal.4th 243, 279.)[4]

Thus, as applied to this case, if the deputy had probable cause to find that defendant's car contained evidence of the burglary, namely at least one of the victim's missing items, then her warrantless search of the car was proper and permissible under the automobile exception. Similarly, although this is primarily a warrantless search case, if the deputy had probable cause to believe that the swatch of black canvas material she saw through the window was the victim's bag, then entry into the car and seizure of the bag was permissible under the plain view doctrine.

Here, under the totality of the circumstances, the deputy had probable cause to believe both generally that the stolen items were in the car (automobile exception) and specifically that the black canvas material was the victim's bag (plain view doctrine). As the trial court noted, the deputy was aware of some sort of disagreement between the sister and defendant that had led to his eviction from the house, providing motive for defendant to be upset with her. Defendant would have believed his car key to be inside the house with the sister, who had left a window open, providing defendant motive and opportunity to enter the house to try to find his key. Thus, when the deputy heard the victim's suspicions that defendant had stolen the missing items, it was reasonable for her to concur. Similarly, it was reasonable for the deputy to assume that because defendant's

---

[4] Defendant does not contest the factual findings of the trial court.

7

car had not moved, and because he had access to it earlier that morning, that any stolen items would still be in the car.

The deputy looked inside the car and saw the sweatshirt arranged, as the trial court noted, in a manner that appeared intended to conceal what was under it. The pile under the sweatshirt appeared to be the right size to contain the missing items. And the victim tentatively identified his missing bag sticking out from under the sweatshirt which description matched his earlier description of the bag as black canvas. Under the totality of the circumstances, that identification, taken together with the reasonable assumption that defendant was the one who took the missing items, constituted probable cause for the deputy to conduct a warrantless search.

Defendant argues that the plain view doctrine does not apply in this case because the incriminating character of the items in the car in general and specifically the Buffalo Wild Wings bag was not " 'immediately apparent,' " citing older United States Supreme Court cases. However, defendant misunderstands the phrase "immediately apparent," which has been defined by subsequent courts as nothing more than an alternate way of saying "have probable cause," as explained above. (*Minnesota v. Dickerson*, *supra*, 508 U.S. at p. 375-376; *People v. Gallegos*, *supra*, 96 Cal.App.4th at p. 623.) This is primarily a warrantless search case, but to the extent that plain view seizure applies, the deputy properly entered the car and seized the victim's bag under the plain view doctrine, as well. (See *People v. Lomax*, *supra*, 49 Cal.4th at p. 564 [police allowed to enter car and seize gun seen through window].)

8

Accordingly, the trial court properly denied defendant's motion to suppress the evidence found during the search under either the automobile exception or the plain view doctrine.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

9